CHAPMAN & DEWEY LUMBER COMPANY *v.* JONESBORO, LAKE CITY

& EASTERN RAILROAD COMPANY.

Opinion delivered January 23, 1911.

1. CARRIERS—OVERCHARGES—RECOVERY.—A shipper is entitled to have his property transported by a common carrier at reasonable rates that are fixed in the manner provided by law, and to recover charges in excess of the authorized rates which he has been compelled to pay in order to secure the transportation of his property. (Page 307.)

2. SAME—REGULATION BY STATE.—A State has power to establish the rates of charges that may be exacted by railroads for the transportation of property within their jurisdiction not a part of interstate or foreign commerce, provided that the rate thus fixed will afford reasonable compensation for the services rendered; and the State may authorize a board or commission to fix such rates. (Page 307.)

3. SAME—RIGHT OF STATE TO REGULATE SHIPMENTS.—A shipment of rough lumber from and to points wholly within the State constitutes intrastate commerce, and may be regulated by the State Railroad Commission, though it was intended and understood at the time that the finished product of such lumber should be reshipped to a point outside the State. (Page 308.)

4. COMMERCE—REGULATION BY STATE.—A commodity does not become an object of interstate commerce simply because the owner intends to sell it in another State or prepares it for such sale, but it must be actually started on its movement to another State before it becomes a part of an interstate shipment. (Page 310.)

5. CARRIERS—REGULATION OF CHARGES.—That the factory owned by a shipper of rough lumber was not actually located on defendant's line of railroad, but was one mile away, where it could be reached by a switch track, did not exempt defendant from the operation of an order of the State Railroad Commission fixing the freight rates on rough lumber moving on railroads wholly within the State upon condition that a certain proportion of such in-bound rough lumber shall be reshipped over same carrier after being manufactured. (Page 311.)

6. SAME—REGULATION OF CHARGES.—Though the State Railroad Commission might consider the amount which a railroad company was entitled to receive upon an out-bound shipment in fixing the charge upon an in-bound shipment, such amount did not affect the power of the commission to fix such rate. (Page 312.)

7. SAME—REGULATION OF CHARGES—JOINT SHIPMENT.—That shipments of rough lumber were moved from defendant's railroad to the shipper's factory, one mile distant, being transported by means of a switch by another carrier, did not render the shipment a joint one as affecting the applicability of an order of the State Railroad Commission fixing the freight rate on rough lumber which is shipped upon condition that a certain proportion thereof be reshipped over defendant's line. (Page 312.)

Appeal from Poinsett Circuit Court; *Charles Coffin,* Judge on exchange; reversed.

*Percy & Hughes,* for appellant.

1. Where an excessive freight rate is demanded by the carrier, the shipper may pay it under protest and recover the excess. 4 Elliott on Railroads, § 1564 and cases cited; 2 Hutchinson on Carriers, (3 ed.) 805, § 574 and cases cited; 6 L. R. A. (N. S.) 225; 25 W. Va. 434.

2. The tariff fixed by the railroad commission does not affect interstate shipments. Whether a shipment is local or interstate depends upon the contract for transportation. This contract, whether in form of a bill of lading, or otherwise, is the determining factor. Barnes' Interstate Transportation, 69; Watkins, Shippers and Carriers, 90; 162 U. S. 192. It can not be

reasonably contended that these shipments from the point of origin to Jonesboro, both points being wholly within the State, form parts of interstate shipments because the finished product may afterwards be shipped out of the State. Even an intention on the part of the shipper so to forward the product would not make the first shipment part of an interstate journey. It is only when a shipment actually begins for a destination to some point beyond the limits of the State that it assumes an interstate character. 209 U. S. 405; 217 U. S. 413; 8 Wall. 168; 155 U. S. 648; 116 U. S. 517; 188 U. S. 82; 204 U. S. 403; 209 U. S. 211; 93 Va. 749; 34 L. R. A. 105.

3. As to the rate being noncompensatory, the burden of proof was on the appellee to establish that fact, and that burden has not been met, as appears by the record, and the refusal of the trial court to pass upon that question. But the question of the reasonableness of this rate is not open here. It arises upon a *particular rate,* and it is well settled that a carrier may be compelled to do some things at a loss, and that all it is entitled to receive is a fair return upon its aggregate business. 54 Ark. 112; 156 U. S. 649; 60 Ark. 244. The law requires the complaining party to go first to the railroad commission, in whom is vested the power to prescribe rates, to obtain any changes therein; but, so long as a rate stands as the tariff rate, both parties are bound by it. 204 U. S. 426; Kirby's Digest, § § 6803, 6809.

*W. A. Falconer, amicus curiae,* for the Arkansas Railroad Commission.

1. Appellee's first reason for contending that the commission's order is not applicable as between appellant and appellee, viz., that appellant did not and could not offer for outbound shipment the proportion of finished product required by the order itself, is fully answered by the court finding that "plaintiff offered continually to contract to give the defendant the outbound product at the percentage fixed on box shooks in the railroad commission's tariff order."

The unsoundness of its second objection, that appellee's plant was on the tracks of another railroad and that a joint haul was therefore involved, is shown in the fact that appellee of its own motion petitioned the commission to make the rough material

rate apply to it, although all the wood-working factories were then, as now, located on other tracks. It is estopped to raise this objection.  203 U. S. 49.   See also 211 U. S. 611, 53 Law. Ed. 352.

2.  The order is not invalid under the Federal Constitution, either as fixing a rate which is noncompensatory, or as attempting to regulate interstate commerce.  There is no satisfactory proof that the rate is confiscatory.  Moreover, this claim is discredited by the fact that appellee obtained permission to apply this rate, and did apply it to some, while denying it to appellant.  It will not be permitted to discriminate or to plead confiscation or a regulation of interstate commerce under these circumstances. 203 U. S. 49; 211 U. S. 611.

The order is in no sense a regulation of interstate commerce.  84 Ark. 253; 204 U. S. 403; 85 Fed. 435.

*E. Foster Brown, Hawthorne & Hawthorne* and *Moore, Smith & Moore,* for appellee.

1.  Rough material rates are not applicable where the manufacturing plant is not located on the line of road bringing in the rough material, or where a joint shipment is necessary to transport either the rough material to or the finished product from the manufacturing plant.

2.  The finished products of appellant's manufacturing plant are forwarded to points beyond the State, and the movements of the rough material to its mill and the subsequent forwarding of the finished product to points beyond the State constitute interstate commerce in the commodity, and the rough material rates of the Arkansas Railroad Commission are not applicable.  Barnes, Interstate Trans., § § 224, 222; 16 I. C. C. R. 232; 9 *Id.* 316; 8 *Id.* 121; 7 *Id.* 240; 10 *Id.* 193; 188 U. S. 1; 202 U. S. 543.

3.  If the rough material rates are applicable, then the rate of two cents per hundredweight on rough lumber is noncompensatory, and the charge made of five cents per hundred weight for the haul of the rough lumber was not an unreasonable or unjust charge. Art 2, § 8, 13. Const. Ark.; Fourteenth Amendment Const. U. S.; 85 Ark. 12; 209 U. S. 164; 156 U. S. 649; 206 U. S. 933; 179 U. S. 287; 173 U. S. 684; 109 U. S. 466; 186 U. S. 257; 91 Ark. 358; 118 Fed. 422; 172 U. S. 269; 80 Ark. 540.

FRAUENTHAL, J.   This was an action instituted by the Chapman & Dewey Lumber Company, the plaintiff below, to recover the amount of certain freight charges in excess of the legal rates which it claimed that it was compelled to pay to the defendant for the transportation of its property.   The defendant is a domestic railroad corporation, and owns and, as a common carrier, operates a line of railroad which is situated entirely within the State of Arkansas and extends from the city of Jonesboro to Barfield, in Mississippi County, and also to Osceola in the same county.   Between these stations there are located on said line of railroad intermediate stations, among which are Black Oak, Monett and Wheeler, situated within a distance of less than 25 miles from Jonesboro; and from these stations defendant is engaged as a common carrier in transporting logs and rough lumber on its railroad to the city of Jonesboro.   The plaintiff is a corporation engaged in the manufacture of rough lumber into box shooks, which consist of the ends, sides, tops and bottoms of a box bound together in packages; and its factory at which it manufactures these box shooks is situated in the city of Jonesboro.

Its box factory is located on the line of railroad of the St. Louis & San Francisco Railroad Company, about one mile distant from the terminus of the line of defendant's railroad in said city, where it has physical connection with said line of railroad of the St. Louis & San Francisco Railroad Company by means of a switch.   The plaintiff obtained its rough lumber at the above stations of Black Oak, Monett and Wheeler, and shipped same from said points over defendant's line of railroad to Jonesboro; and all said shipments were transported by defendant from said stations to the terminus of its line in Jonesboro, which were named in the bills of lading issued therefor as the points of origin and destination; and said terminus was the final point to which the defendant agreed to transport the lumber.   Upon their arrival at said terminus of defendant's line in Jonesboro the shipments were switched to the plaintiff's factory, and the plaintiff paid the switching charges in addition to the transportation charges.   The plaintiff manufactured 95 per cent. of said rough lumber into said box shooks, and actually sold and shipped such manufactured product to parties and places outside of the State of Arkansas; the re-

maining five per cent. was first-grade lumber, and was disposed of to parties without the State.

It appears that there are located at Jonesboro a number of plants which are engaged in manufacturing rough lumber and logs into finished products of various kinds. On April 1, 1907, the railroad commission of Arkansas made an order fixing the freight rates on rough lumber moving on railroads wholly within the State, and therein provided that such rate should be two cents per hundred pounds for transportation thereof for a distance of from one to 50 miles, inclusive, in cars of 40,000 minimum weight. Said order also provided:

"The above-named rates are conditioned upon the manufactured product being reshipped over the same line bringing in the rough material, and may be only used subject to the following conditions: The proportion of the tonnage of outbound manufactured product to the tonnage of inbound rough material shall not be less than the following:

\*      \*      \*      \*      \*      \*      \*      \*      \*

"The rates above named are intended to be used as rough material rates only, and carriers will be allowed by the commission to require consignees desiring to avail themselves of the benefit of same to enter into a suitable contract with reference to the reshipment of the specified percentage of the finished product. Provided, the terms of said contract must be satisfactory to and approved by the commission. Provided further, that in no case shall the contract provide for a higher rate on inbound shipments than outlined in the above table.

"The rates provided in this order do not include switching charges at point of shipment, or at destination. All such charges will be assessed and collected in addition to the regular freight charges.

"The rates provided in this order shall not apply to joint shipments."

In March, 1908, the defendant applied to the commission requesting it to make an order specifically extending the above order to the defendant and the traffic upon its line of railroad, which was done on April 2, 1908. This order did not specifically name box shooks as a manufactured product of rough lumber,

and the plaintiff then applied to the commission for an amendment of said order fixing said rates on rough lumber so as to treat box shooks as one of the manufactured products thereof. On June 30, 1908, said commission made an order in compliance with said application, and therein specifically made it apply to the defendant and the traffic upon its line of railroad. The effect of this last order was to make the regular tariff rate on rough lumber shipments from points on defendant's railroad within 50 miles of Jonesboro, Arkansas, to Jonesboro, Arkansas, two cents per hundred pounds subject to all the conditions named in the above original order and with the further condition that the proportion of the tonnage of box shooks into which the rough lumber should be manufactured for outbound shipments should not be less than 40 per cent. of the weight of the inbound rough lumber shipments. After said last order was made by the commission the defendant made application to it to be exempted therefrom, which was denied.

Thereafter the plaintiff made a great number of shipments of rough lumber over the defendant's railroad from its stations, Black Oak, Monett and Wheeler, to Jonesboro, Arkansas. At the time of making each shipment the plaintiff offered and agreed to enter into a contract with defendant by which it would reship 40 per cent. of the rough lumber in the shape of the manufactured product of box shooks out over defendant's railroad, and offered to comply with all the conditions of said order of the commission, so that it would be entitled to the rate of two cents per hundred pounds upon the said inbound shipments of rough lumber. It made this offer to defendant in writing, and insisted that it should only pay two cents per hundred pounds upon such inbound shipments. But the defendant refused to accept such offer, and refused to carry said rough lumber from said stations to Jonesboro at a less rate than five cents per hundred pounds. Thereupon the plaintiff paid the rate of five cents per hundredweight on said shipments of rough lumber from said stations to Jonesboro under protest; and by this suit it seeks to recover the alleged overcharge of three cents on each 100 pounds of said shipments. It contends that the rate fixed by the commission on rough lumber in the above order should apply to the shipments made by it from the points above named to Jonesboro as the maximum legal rate, and

that it should be entitled to recover the excess which it was compelled to pay.

The defendant contends that it charged the plaintiff for the transportation of said lumber its regular local rate of five cents per hundred weight on rough lumber shipments, which it had a right to do because the above order of the commission was not applicable either in fact or in law to the shipments made by plaintiff. The case was tried by the lower court sitting as a jury, who made certain findings of fact and declarations of law in favor of the defendant and rendered judgment against the plaintiff for costs, and from this judgment plaintiff prosecutes this appeal.

It is well settled that a shipper is entitled to have his property transported by a common carrier at reasonable rates that are fixed in the manner provided by law. The shipper is entitled to recover back rates in excess of those authorized by law which the carrier has exacted, and which he has been compelled to pay in order to secure the transportation of his property. As is said in the case of *Texas & P. R. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426: "It is also beyond controversy that when a carrier accepted goods without payment of cost of carriage or an agreement as to the price to be paid, and made an unreasonable exaction as a condition of the delivery of the goods, an action could be maintained to recover the excess over a reasonable charge. And it may further be conceded that it is now settled that, even where, on receipt of the goods by a carrier, an exorbitant charge is stated, and the same is coercively exacted, either in advance or at the completion of the service, an action may be maintained to recover the overcharge." 2 Hutchinson on Carriers, § 805; 4 Elliott on Railroads, § 1564; 6 Cyc. 498. So that, if a carrier has required the shipper to pay for the transportation of his goods a rate in excess of that which is authorized by law as a reasonable compensation for the service, the shipper is entitled to recover back such excess. *Heiserman* v. *Burlington, etc., Ry. Co.,* 63 Iowa 732.

It is also well settled that a State has the power to regulate and establish the amount of the charges that may be exacted by railroad companies for the transportation of property within its own jurisdiction, if the rate thus fixed will afford reasonable compensation for the services rendered, and what is done does not

amount to a regulation of foreign or interstate commerce. The commerce which is wholly confined within the limits of the State is as much under the control of the State as foreign or interstate commerce is under the control of the United States. And where the State may thus regulate the commerce wholly within its boundaries, it may establish a board or commission to which it can intrust the power to fix rates for the transportation of passengers and freight upon railroads wholly within its borders. *Dabbs* v. *State,* 39 Ark. 353; *Stone* v. *Farmers' Loan & T. Co.,* 116 U. S. 307; *Sands* v. *Manistee R. Imp. Co.,* 123 U. S. 288; *Louisville, N. O. & T. R. Co.* v. *Mississippi,* 133 U. S. 587; *Alabama & V. R. Co.* v. *Railroad Com.,* 203 U. S. 496; 2 Hutchinson on Carriers, § § 574, 575.

The Arkansas Railroad Commission, to whom the State confided the power to regulate and fix the rates which should be charged by railroads within the State's limits for the transportation of persons and property within the State, had the right to establish the rates which the defendant should charge for the transportation of property over its line of railroad, provided that such charges are a reasonable compensation for the services performed and do not affect shipments made in the course of interstate commerce.

It is earnestly insisted by the defendant that the shipments made by plaintiff of the rough lumber over its line into Jonesboro upon the condition that the manufactured product therefrom should be reshipped out over its line were interstate shipments, for the reason that in effect the entire outbound shipments, according to the testimony, were actually made to points outside of the State. It is urged that the shipment of the rough lumber over defendant's railroad into Jonesboro, accompanied with the understanding and intention that it should there be manufactured into the finished product and then shipped out over defendant's line to points beyond the State, constituted in effect one continuous shipment from the point of origin on defendant's line at Black Oak, Monett or Wheeler to the final destination out of the State. It is contended that the above order of the Arkansas Railroad Commission requiring that the rate on rough material should be based upon the condition that the shipper should reship the outward haul of the manufactured

product over defendant's line made a contract by which the ship-
per agreed with defendant that the property should be trans-
ported from the points of origin on defendant's railroad to the
place of final destination out of the State. In other words, that,
under the above order, it was really intended and provided that
there would be one continuous shipment from the points of origin
of the rough material to the place of final destination of the
manufactured product out of the State, with the privilege of
manufacturing the rough material in transit at Jonesboro. But
we do not think this contention is correct. The contract of ship-
ment is determined by the agreement made by the parties at the
time. The places of origin and of destination of a shipment are
determined solely by such agreement. The mere unexpressed
intention cannot fix the place of the destination of the shipment,
but that is fixed by the contract itself. The contract in this case
of the shipment of the rough material fixed the place to which
it should be carried as Jonesboro, Arkansas. That contract was
evidenced by the bills of lading by which the defendant agreed
to carry the rough lumber from said above stations of Black
Oak, Monett and Wheeler to Jonesboro. Under that contract
the beginning and end of the movement was wholly within the
State. After the rough material was manufactured by plaintiff
at its box factory at Jonesboro, it then sold the box shooks to
whomsoever it could profitably do so, whether such purchaser
was located in the State of Arkansas or out of the State. After
making the sale of the box shooks, it then proposed to ship same
over the defendant's line from Jonesboro to such place, whether
out of or in the State. And, whether such place was in or out
of the State, this became a second and distinct shipment, and
was not connected with the first shipment into Jonesboro. For
such second shipment the plaintiff would be compelled to pay
the regular rates fixed on such shipments by the Interstate Com-
merce Commission, if the point of destination was out of the
State. By the first shipment the rough material began to move
at Black Oak, Monett or Wheeler and the movement ended at
Jonesboro. The second shipment began to move at Jonesboro
and ended at the place of destination out of the State if it was
an interstate shipment. The two shipments were distinct and sep-
arate, and the second shipment began only when the box shooks

were actually entered with and delivered to the carrier for transportation; and if it was to be shipped out of the State, it then, and not until then, became a part of an interstate shipment. As is said in the case of *The Daniel Ball*, 10 Wall. 565: "Whenever a commodity has begun to move as an article of trade from one State to another, commerce in that commodity between the States has commenced." And, as is held in the case of *Coe* v. *Errol*, 116 U. S. 517: "But this movement does not begin until the articles have been shipped or started for transportation from one State to another. * * * Until actually launched on its way to another State, or committed to a common carrier for transportation to such State, its destination is not fixed and certain. It may be sold or otherwise disposed of within the State and never put in course of transportation out of the State. * * * Until shipped or started on its final journey out of the State, its exportation is a matter altogether *in fieri,* and not at all a fixed and certain thing." The commodity does not become an object of interstate commerce simply because the owner intends to sell it in another State or prepares it for such sale, but it must be actually started on its movement to another State before it becomes a part of an interstate shipment. In the case of *United States* v. *Boyer*, 85 Fed. 435, in speaking of the point of time when interstate commerce begins, Judge Rogers says: "When the (interstate) commerce begins is determined, not by the character of the commodity, nor by the intention of the owner to transfer it to another State for sale, nor by his preparation of it for transportation, but by its actual delivery to a common carrier for transportation, or the actual commencement of its transfer to another State. At that time the power and regulating authority of the State ceases, and that of Congress attaches and continues, until it has reached another State and become mingled with the general mass of the property in the latter State. That neither the production or manufacture of articles or commodities which constitute subjects of commerce, and which are intended for trade and traffic with citizens of other States, nor the preparation for their transportation from the State where produced or manufactured prior to the commencement of the actual transfer or transmission thereof to another State, constitutes that inter-

state commerce which comes within the regulating power of Congress."

The order of the Arkansas Railroad Commission required the shipper to reship his manufactured product over the same line bringing in the rough material, when such outward shipment should be made. This was nothing more than a determination or intention to make a future shipment, and the actual commerce in which such shipment would then move would not begin until the product was actually started on such transportation; and until it did so start on a transportation to another State it did not become an object of interstate commerce. Under this order of the commission the shipper might make a sale and transportation of the manufactured product entirely within the State, and until the transportation was started it could not be said whether it moved in intrastate or interstate commerce. We do not think, therefore, that a compliance with the above order of the Arkansas Railroad Commission made the shipments of the rough material therein named matters of interstate commerce, even if all the products manufactured therefrom were afterwards actually shipped out of the State. The inbound shipment of the rough material constituted one distinct and separate character of commerce which was completed when the shipment was delivered at the point of destination named in the bill of lading, and, being entirely within the State, was the subject of regulation by the Arkansas Railroad Commission. The commission did not by the above order fix or attempt to fix the rates that should be charged upon the outbound shipments, and therefore did not assume to establish or regulate the charges upon such shipments or to make such shipments subject to its regulations.

It is urged that the above order of the Arkansas Railroad Commission does not apply to the shipments made by plaintiff for the reason that its factory was not actually located on defendant's line of railroad. It is claimed that the order provided that the manufactured product would have to be reshipped over the same line bringing in the rough material before the shipper would be entitled to the rough material rates therein established; and that this necessarily meant that the manufacturing plant should be located on such carrier's railroad, so that the reshipment could be made over such line. But we do not

think that under the facts of this case this contention is well founded. The plaintiff's factory was situated in the city of Jonesboro, and about one mile from the terminus of defendant's railroad, and was reached by switching facilities. The order itself stated that the rates established did not include switching charges, either at point of shipment or destination, and that such charges would be assessed and collected in addition to the regular rates. It therefore presupposed that it might be necessary that the shipments would have to be switched from defendant's line to the shipper's factory, and thus recognized that such factory was in effect upon such line. It viewed the transfer of the shipments from the line of the railroad to the factory in the same light as if the shipment was hauled thereto by wagon. By the switching arrangement the manufactured product could be hauled from the factory back to defendant's line and there delivered to it for shipment over its line of railroad. The mere fact that plaintiff's factory was located upon another line of railroad did not require it to ship over such other railroad. It could reship over defendant's road from Jonesboro just as easily as it could have done if its factory had been located directly on defendant's railroad track at its terminus in Jonesboro. From Jonesboro the defendant could ship the outward haul over its line of railroad to Nettleton or Blytheville and there deliver to a connecting carrier; or, if more satisfactory or convenient, it could deliver the shipments to a connecting carrier at Jonesboro with whom, under the testimony, it had arrangements for a division of rates on interstate shipments received from it. As a matter of fact, the defendant could reship over its line of railroad from Jonesboro and receive a portion of the rate for the transportation of the outbound hauls. The amount which it was entitled to receive upon such outbound hauls might, and no doubt did, address itself to the railroad commission in fixing the amount of the rates named in the above order, but such amount could not affect the power of the commission to establish such rates.

Nor can it be said that there was a joint shipment in making the inbound haul of the rough material because same was by the switching facilities moved from defendant's line of railroad to plaintiff's factory. The final destination of all such shipments was at the terminus of defendant's line at Jonesboro, and they

were not transported further by any other carrier. The defendant began and completed the transportation of all inbound shipments of rough material made by plaintiff over its line of railroad, and made no transportation thereof jointly with another carrier over any part of such route. Barnes on Interstate Transportation, § 80 B.

It is further urged by the defendant that the rate of two cents on the rough material established by the above order of the commission was, when applied to defendant's railroad, noncompensatory and unreasonable. We have not deemed it advisable to enter into a discussion or determination of this phase of the case for the reason that the lower court did not make any finding thereon because this phase of the case was not sufficiently developed by the testimony adduced upon the trial of the case. Furthermore, it follows from the above that the judgment herein must be set aside, and the cause remanded for a new trial. Upon a new trial hereof further and additional testimony may be introduced which may more fully develop this phase of the case and throw light on the question as to whether or not the rate fixed by the Arkansas Railroad Commission is so unreasonable that it does not afford a sufficient compensation for the service rendered and thereby proves confiscatory.

The lower court made findings of fact and declarations of law from which it concluded that the plaintiff was not entitled to recover herein because (1) the plaintiff could not reship its manufactured product over defendant's line of railroad, as required by the order of the commission; and (2) because the inbound shipments of rough material made by plaintiff were a part of one continuous transportation made in interstate commerce. We are of the opinion that the court erred in its findings and declarations leading to this conclusion and in the judgment which it rendered.

For these errors the judgment is reversed, and the cause remanded for a new trial.