BUSH, RECEIVER ST. LOUIS, IRON MOUNTAIN & SOU. RY. Co., *v.* SOUTHERN GROCERY COMPANY.

Opinion delivered December 16, 1918.

1. APPEAL AND ERROR—SECOND APPEAL—LAW OF CASE.—In an action for cotton destroyed by fire after delivery to a warehouseman, with which consignee had made arrangements to receive goods from defendant railway company, a decision on former appeal that whether there had been a delivery so as to relieve defendant from its liability was a question for the jury is the law of the case; there being no substantial difference in the testimony.

2. CARRIERS—LOSS OF GOODS—LIABILITY.—In an action for cotton destroyed by fire after delivery to a warehouseman with whom consignee had made arrangements to receive the goods from defendant railway, *held,* there was no error in excluding the contract between the railway company and the warehouseman under which the latter assumed responsibility for cotton delivered at its warehouse.

3. CUSTOMS AND USAGES—EVIDENCE—DELIVERY OF GOODS SHIPPED.—
In an action against defendant railway for cotton destroyed by
fire, testimony of a custom requiring the surrender of the bill of
lading to obtain a clearance was competent for the purpose of
determining when delivery, which was governed by custom and
not by bill of lading, had been made.

4. COMMERCE—SHIPMENT OF GOODS.—That the consignee would have
sold shipments of cotton, and the vendee would have taken charge
and would have reshipped to points within and without the State,
would not make the shipments interstate.

5. COURTS—CONFLICTING JURISDICTION—RECEIVERS.—A State court
was not without jurisdiction to declare a lien against the prop-
erty of defendant railway company pursuant to Kirby's Dig. § §
6661, 6662, or to render a judgment for damages although at the
time of trial and of accrual of the cause of action the railway was
being operated by a receiver appointed by a United States court,
in view of Act of Cong. of March 3, 1887, § 3, as amended by Act
of Cong. of August 13, 1888, § 3.

Appeal from Jefferson Circuit Court; *W. B. Sorrells,*
Judge; affirmed.

*E. B. Kinsworthy* and *R. E. Wiley,* for appellant.

1. The verdict is without evidence to support it.
The testimony is different from that on the former ap-
peal. 131 Ark. 155. The compress company's manager
did not testify here that he would not have delivered the
cotton without the clearance and the contract between the
railway and compress company is not in evidence. There
was a complete delivery of the cotton and a verdict
should have been directed for appellant.

2. The shipments were interstate and the Federal law
governs. 219 U. S. 498; 227 *Id.* 111; 225 *Id.* 101; 241
Fed. 562. Applying the Federal law a verdict should
have been directed for defendant. 226 U. S. 491; 227 *Id.*
657; 233 *Id.* 97; 240 *Id.* 632; 241 *Id.* 371; 38 Minn. 95; 35
N. W. 718; 44 *Id.* 1120; 5 Wall. 481; 95 U. S. 43; 104 *Id.*
146; 38 Minn. 95. Appellee could have gotten ware-
house receipts for the cotton at any time without any ac-
tion of the railway company. Appellee had arrangements
with the compress company to have the cotton stored un-
der the published rules of that company and one of the

rules was that warehouse receipts would be issued upon surrender of the bill of lading, or presentation of clearance from the railway. The proof of the custom of the railway company to issue clearances and for the consignee to get warehouse receipts, etc., did not entitle appellee to go to a jury on the question of sufficient delivery of the cotton. There is no testimony that the railway company had instructed the compress company to withhold warehouse receipts until clearances were issued. Even if the railway company was keeping control over the cotton by means of the clearance it was as a warehouseman only and not as a carrier. 35 N. W. 718; 44 *Id.* 1120. See also Michie on Carriers, 1154, § 1554, 1161, § 1566; 56 Ark. 430. Appellant even after parting with the custody was entitled to withhold possession until the freight charges were paid. The compress company could be the agent of the carrier to collect freight charges, or to hold the cotton until these charges were paid. 76 Ark. 180; 85 *Id.* 169. The proof shows that the carrier actually controlled the cotton after its delivery to the compress company, but the strict liability of a carrier no longer continued after appellee had made actual and complete delivery to the bailee designated by appellant.

3. It was error to admit testimony of the custom to require surrender of the bill of lading. No custom can be admitted in evidence to contradict or vary a written contract. 106 Ark. 400. These shipments were on straight bills of lading, not shippers order bills of lading, and were contracts to carry and deliver to the person named therein; it might require identification of the consignee but it could not demand surrender of the bill of lading. 7 S. W. 504; 64 Ark. 169. There was printed on the face the words "not negotiable" and this took them out of the provisions of Kirby's Digest, § § 529, 530-1. Therefore the proof of the custom contradicting the contract was not competent and it was prejudicial.

4. It was error to exclude the contract between the carrier and the compress company. Michie on Carriers 590; 108 Md. 285; 70 Atl. 232.

5. There was prejudicial error in the instructions. They were abstract and confusing—misleading. 240 U. S. 632.

6. The court was without jurisdiction to declare a lien, as there was a receivership. 208 U. S. 38; 193 *Id.* 93; 160 Fed. 355.

*Coleman & Gantt,* for appellee.

1. All the questions raised were settled by the decision on former appeal. 131 Ark. 153. The testimony as to delivery and clearance is the same.

2. The shipments were between points wholly in Arkansas and intrastate. 97 Ark. 300; 22 Interstate Com. Rep. 255; L. R. A. 1917 D. 1190; 204 U. S. 403; 219 *Id.* 498; 227 *Id.* 111; 225 *Id.* 101; 241 Fed. 562. The Federal decisions do not control. 240 U. S. 632. See also 95 *Id.* 43; 104 *Id.* 146; 173 *Id.* 348, etc.

3. The custom was properly proven. 95 U. S. 43.

4. There is no error in the instructions. As a whole they correctly state the law.

5. The court had jurisdiction. Act Congress March 3, 1887, Judicial Code, § 66; 151 U. S. 81; 177 Fed. 870; 145 U. S. 132; 168 Fed. 862; 68 N. E. 129; 79 S. E. 264; 175 Fed. 192; 179 U. S. 335; etc.

6. A lien was properly given. Kirby's Digest, §§ 6661-2; 74 Ark. 366; 203 S. W. 1038.

SMITH, J. The facts out of which this litigation arises are fully stated in the opinion delivered on a former appeal. *Southern Grocery Co.* v. *Bush, Recvr.,* 131 Ark. 153. The controlling question of fact is whether certain consignments of cotton had been delivered by the railway company to the consignee. At the former trial the trial judge was of the opinion that the undisputed testimony showed that a completed delivery had been made, and, accordingly, directed a verdict in favor of the railway company. On the appeal, we reversed that judgment, because, in the opinion of the majority of the court, the testimony presented that question of fact.

Upon the first trial, there was offered in evidence a contract in writing between the railway company and the

compress company into whose warehouse the cotton had been delivered, under the terms of which the compress company assumed the responsibility for the cotton as soon as the same was delivered at its warehouse. But, at the trial from which this appeal is prosecuted, this contract was excluded, and that action of the court is defended upon the grounds that the consignee was not aware of nor a party to this contract, and further that, notwithstanding this contract, the compress company, pursuant to the directions of the railway company, required the delivery to it of a clearance issued by the railway company showing payment of freight before it would surrender possession of cotton received by it. And it was shown that, for many years, the shipping public in its dealings with the railway company and the compress company was required to conform to the custom of obtaining clearances from the railway company, notwithstanding the contract between the railway company and the compress company. It is contended that this custom is unimportant under the facts of this record, because the manager of the compress company testified that he would have delivered the cotton in litigation without the surrender of the clearance, but this manager further testified that he would not have done this except as a matter of accommodation to appellees because of the known solvency of appellees.

As appears from the statement of facts in the former opinion, this custom of the railway company to issue clearances was adopted by it to insure the payment of the freight due it, and in the present record it is again shown that one consignment of cotton had only been received on Saturday afternoon before the occurrence of the fire on the following day, while a clearance had been frequently applied for on the first shipment and the freight tendered. But a clearance was refused by the railway company because of a discrepancy in the marking of one of the bales of cotton.

The court below gave a very elaborate charge. Indeed, complaint is made of its length, but no error is

pointed out in any of the instructions given. The instructions made the liability of the railway company depend upon the question of delivery, and the jury, by its verdict, has found that, at the time of the destruction of the cotton in the fire which burned the compress, the compress company had possession for the railway company and not for appellee. There being no substantial difference in the testimony now and that contained in the record in the former appeal, it is the law of the case that the question of delivery was properly one for the jury. We announced the law of the case in the former opinion as follows: "We think it is not of controlling importance in this case that the cotton was, in fact, stored where appellant would have stored it if no controversy had arisen over the clearance and no difficulty had been encountered in obtaining the warehouse receipt. We think the test is whether the consignee could have removed the cotton had it desired to do so. In other words, was the clearance essential for the actual delivery of the cotton to appellant? Would the compress company have made such a delivery without the production of the clearance as a matter of right, and not as a mere matter of accommodation upon the assumption that the consignee was entirely solvent and responsible and would hold the compress company harmless from any damage resulting from the failure of the compress company to comply with the railway company's requirement?"

Under this test, it is immaterial that the manager of the compress company now testifies that he would have issued warehouse receipts for the cotton in litigation without a clearance, because his testimony makes it plain that, had he done so, it would have been only as a matter of accommodation and upon the assumption that the clearances would be subsequently obtained, appellee's solvency being well known to the manager of the compress company.

No error was committed in excluding the contract between the railway company and the compress company, as appellee was not a party to that contract, and its deal-

ings with the railway company generally were governed by the custom which required that a clearance from the railway company be obtained. Indeed, the testimony shows without dispute that, desiring warehouse receipts from the compress company, appellee had made daily application, accompanied by a tender of the freight, for the clearance, but had not obtained this clearance because of the discrepancy in the marks of one of the bales of cotton.

Error is assigned in the action of the court in admitting testimony of the custom requiring the surrender of the bill of lading to obtain a clearance, because such testimony tended to contradict the written contract of the bill of lading. But this testimony was not introduced for that purpose, but rather to determine when the delivery was made. The bill of lading did not undertake to cover this point. It was offered upon the theory that when the cotton was unloaded at the compress, there was a time during which it was in the custody of the carrier, and that, later, the custody passed to the consignee, or to the compress company, for the consignee, and this point was not covered by the bill of lading, but was governed by a custom of universal application which had prevailed for many years, and it was competent for the purposes of determining when the delivery had been made. *Pratt* v. *Grand Trunk Ry. Co.*, 95 U. S. 43.

It is also insisted that the shipments in question were interstate in their character, and it was urged that, if such be the case, a different rule determining the question of liability would be applicable. That contention can be disposed of, however, by saying that the shipments were not of an interstate character. So far as appellee was concerned, Pine Bluff was the final destination of the shipments. In its usual course of business appellee would have sold the cotton and have delivered it, and its vendee would have taken charge of it and would have reshipped it to some point in or out of the State, at the vendee's pleasure, and such a disposition was intended of the cotton in question and would have been made had it been

delivered. That such a shipment is not interstate, is settled by the decision of this court in the case of *Chapman & Dewey Lbr. Co.* v. *J. L. C. & E. Ry. Co.,* 97 Ark. 300. See, also, case cited in the editorial note to the case of *M., K. & T. Ry. Co.* v. *Ashinger,* L. R. A. 1917 D, p. 1180, and the cases, also, of *Settle* v. *B. & O. S. W. R. Co.,* 249 Fed. 913, and *C. M. & St. P. Ry. Co.* v. *Iowa,* 233 U. S. 334.

It is finally insisted that the court was without jurisdiction to declare a lien on appellant's property, or to render a judgment for damages, for the reason that, at the time of the trial and of the accrual of the cause of action, the railway was being operated by a receiver appointed by the United States District Court for the Eastern District of Missouri, where the receivership was pending. Authority for this suit, notwithstanding the receivership, is found in Section 3 of the Act of Congress of March 3, 1887, as amended by Act of Congress of August 13, 1888, which is now embraced in Section 66 of the Judicial Code, which provides that every receiver or manager of any property appointed by any court of the United States may be sued in respect to any transaction or act of his in carrying on the business connected with such property without the previous leave of the court which appointed him. See, also, *Texas & Pacific R. Co.* v. *Johnson,* 151 U. S. 81, 38 L. Ed. 81; *Nashville Ry. & Light Co.* v. *Bunn,* 168 Fed. 862; *Baer* v. *McCullough,* 68 N. E. 129; *Lassiter* v. *Norfolk So. R. Co.,* 79 S. E. 264; *Hanlon* v. *Smith,* 175 Fed. 192.

The lien declared by the court is given by the statute. Sections 6661, 6662, Kirby's Digest. And this lien exists, although its enforcement is subject to and is suspended by the pendency of the receivership proceeding. *St. L. & S. F. Rd. Co.* v *Coy,* 113 Ark. 265.

Judgment affirmed.