SOUTHERN PACIFIC RAILROAD CO. *v.* A. J. LYON & CO.

[66 South. 209.]

1. CARRIERS. *Carriage of goods. Damages. Liability. Connecting carriers. Liability of initial carrier. Statute. Construction.*
   Where goods were sold at a stipulated price, if they arrived on schedule time, but the carrier was not informed of this arrangement, and not arriving in time, the buyer refused to accept them and the owner was forced to resell them at the best price obtainable, the measure of damages was the difference between the market price of the goods at the time when they should have arrived and when they did arrive.

2. CARRIERS. *Connecting carriers. Liability of initial carrier. Statute. Construction.*
   The Carmack Amendment to the Hepburn Act, approved June 29, A. D. 1906 (34 Stat. 593, U. S. Comp. St. Supp. 1911, page 1307) chapter 3591, section 7, pages 11, 12, declaring that every railroad company receiving property for transportation from one state to another shall issue a receipt therefor, and shall be liable for any loss caused to it by any carrier to which the property may be delivered or over whose line it may pass, makes the initial carrier liable for delay by a connecting carrier, although the bill of lading provides otherwise.

APPEAL from the chancery court of Lauderdale county. HON. SAM WHITMAN, JR., Chancellor.

Bill by A. J. Lyon & Company, against the Southern Pacific Railroad Company. From a decree for complainants, defendant appeals.

The facts are fully stated in the opinion of the court.

*Bourdeoux & Venable,* for appellant.

This is the first error of the trial court. A misconception of the former opinion of this court on the former appeal. Having thus decided the liability of appellant, the court below proceeds to assess the damages. In this aspect of the case, we submit that there were two errors

committed by the learned chancellor: First, the damages allowed were for loss on special contracts with purchasers, when no notice of these contracts was given appellant; second, this damage is not shown to be the difference in market value between the time that the shipment should have arrived and that time that it actually did so.

We challenge the record to show where there is one particle of proof of the market value at the time of the arrival of the shipment or at the time that it should have arrived. The appellee had special future contracts for the sale of the goods. Prices may have advanced or declined. For anything that appears from the record, the market price of the fruit at the time it arrived was actually higher than at the time it should have arrived. If this be true, certainly we have legal authority to say that appellee was not damaged. But conceding this to be true, appellee says that he lost profits on special contracts, and on the clearest legal principles is not liable. Assuming we know that appellee intended the goods for resale, we could only be held for the difference in the market value. But no market or difference in value is shown, and we are sought to be held on special contracts, of which we had no notice, which may have been higher than the market value. Surely, we are not liable.

These propositions are too elementary to require citation of authority. If any be needed, we refer to the extracts of the law cited in the brief of counsel for appellee.

The brief of appellee proceeds on the following fallacies: First, that the contract of carriage was from Fresno to New Orleans; second, that the law of this case has been settled to be that the Hepburn Act applies to delay as well as loss, damages or injury; third, that even if no market values were shown by the proof, yet our alleged negligent delivery rendered us liable for loss of profits on special contracts of sale.

Appellee says: "Appellant cannot hide behind the law that says that the shipper must have notice of special damages. Appellant knew that appellee was a wholesale grocery dealer, and that the goods were bought for resale."

Assuming that there was negligence with which appellant was chargeable, no one, even if negligent, is chargeable with any damages which is not the proximate result of the negligence. It is universally held that profits on special contracts when lost by the negligence of a carrier are not proximate damages, unless the carrier had notice of them. Appellee asks the court to repudiate a fundamental principle of damages.

As to the contention that the law of the case has been settled to be that the Hepburn Act applies to delay as well as loss or damage, we beg to say that this is a misconstruction of the judgment of this court. The Hepburn Act applied because of the damage to the five boxes of raisins, and this was the extent of the judgment of this court. It is the rule, as we understand it, that in construing this opinion the court will adopt that construction which renders it correct, so if this court should be of the opinion that the Hepburn Act does not apply to delay in delivery, the supposedly ambiguous judgment should cause no difficulty, since it is correct and can be sustained as appyling and intending to apply to the matter of the damaged raisins alone, and this is what we believe was actually intended.

Before closing, we desire to call the court's attention to several unintentional misstatements in the brief of appellee. The record nowhere shows that appellant had any notice that the goods were for resale. The goods, when they came into the hands of appellant, were the property of the Monarch Fruit Company, consigned to this company at Meridian, with orders to notify A. J. Lyon & Company. Appellant did not know whether A. J. Lyon, was a broker, a merchant, or what, and it is also

true that appellant had no notice that Lyon had special
contracts of sale for the raisens. In this respect, brief
of counsel for appellee is misleading.

It will be noticed also that the raisens for which dam-
ages were allowed were all actually sold. The damages
are the loss of profits on special contracts of sale. No
claim is made that these raisins were damaged or in-
jured or lost.

It is said, also, that appellant did not explain its neg-
ligent delay in delivery at New Orleans. This is not
borne out by the record. It is undisputed that the delay
was not caused by appellant, but by a connecting carrier
for whose negligence appellant is not liable, under the
terms of its contract of lading, and is not liable at all, un-
less it is held that the Hepburn Act applies to delay as
well as loss and damage.

*McBeath & Miller,* for appellee.

Counsel for appellant in his ingenious brief endeavors
to limit the question to be presented to this court to a
construction of the Carmack amendment to the Hepburn
Act of Congress, approved June 29, 1906, but the learned
chancellor, in passing on this matter, twice held that the
Southern Pacific was liable for failure to comply with
its contracts to "safely transport said car from Fresno,
California to Meridian, Mississippi, *via* the Queen & Cres-
cent at New Orleans."

The appellant demurred to this bill and one ground of
the demurrer was that, the bill set out one cause of action,
because the contract sued upon, to wit, the bill of lading,
shows that the Southern Pacific Company undertook only
to transport said car from Fresno, California, to El Paso,
Texas."

But neither the lower court nor this court adopted
counsel for appellant's views. Judge WHITFIELD, in this
case reported in 54 So. 728, in response to this ground
of demurrer says: "The view asserted by the demurrer

is too narrow.  The bill of lading must be taken as a whole and it provided that the Southern Pacific should deliver to the Queen & Crescent System, New Orleans, Louisiana.''

We have a construction of the ''bill of lading'' in question from this court and it is held that the contract provided that the Southern Pacific undertook to safely transport this car from Fresno, California, to New Orleans, Louisiana, and deliver it to the Queen & Crescent System. The law implies a contract to deliver it within a reasonable time, and we submit that both the chancellor and this court were correct in their construction of the bill of lading.  If the Southern Pacific Company did not transport said car safely and within a reasonable time from Fresno, California, and deliver it to the Queen & Crescent System at New Orleans as they agreed to do, then they are liable to A. J. Lyon & Company for such damages as they sustained by reason of the delay.

Courts don't make contracts, they construe them.  Appellant, by its bill of lading, agreed to safely and within a reasonable time transport said car from Fresno, California, and deliver it to Queen & Crescent System at New Orleans, and when they deliver it to the Illinois Central System, they breached their contract.

Nowhere in the records nor in the brief and argument of counsel for appellant will be found any explanation or justification of the negligence of appellant in delivering this car to the Illinois Central Railway and letting it remain there nine or ten days.  So we contend irrespective of the Hepburn Act, appellee is entitled to recover.  As to the Hepburn Act we cannot agree with counsel for appellant that the delay did not occur on the line of appellant.  It contracted to deliver the car to the Queen & Crescent System at New Orleans nine or ten days before it did so.  The proof shows that the delay resulted in considerable loss and damage to appellee and if this court should be of the opinion that this delay was caused

by one of the connecting carriers and not the appellant, the initial carrier, yet we submit, that no court will give this act the narrow and restricted construction that counsel for appellant insists upon. It is such damages as had been proven in this instant case as is contemplated by the Hepburn Act.

In *Southern Pacific v. A. J. Lyon,* 51 So. 784, which is the instant case, Judge WHITFIELD says: ''The bill of lading in this case was executed on November 11, 1906, and was therefore subject to the provisions of the Hepburn Act, since the suggestion of error is based wholly on the special contract manifested by the bill of lading and limiting the liability of the initial carrier to loss accruing on its own line, and since this stipulation was written out of it by the said Hepburn Act, the suggestion of error is of course, without merit. As to measure of damages.

We do not think there is any question as to the right of the appellee to recover in this cause, and we insist that the chancellor was correct in assessing these damages. The delay of ten days in New Orleans, which delay was unexplained, is such negligence that would make appellant liable for all damages that occurred. And appellant cannot hide behind the law that says ''that the shipper must have notice of special damages.'' Appellant knew that appellee was a wholesale grocery dealer, and that the goods were bought for resale. Hutchinson on Carriers (3d Ed.), sec. 1366.

COOK, J., delivered the opinion of the court.

This case has been before this court upon an appeal from a decree overruling appellant's demurrer to the bill of complaint, and the decisions of the court are reported in 99 Miss. 186, 54 So. 728, 34 L. R. A. (N. S.) 234, Ann. Cas. 1913D, 800, and in 54 So. 784. This appeal is from a decree against appellant upon the merits.

It appears from the evidence that A. J. Lyon & Company were wholesale grocers and candy manufacturers,

and as such bought a car load of fruit in California and delivered same to the Southern Pacific Railroad Company, appellant, to be transported over its and connecting lines to Meridian, Mississippi. These goods were bought for resale to the customers of the wholesaler and were goods for the holiday trade. The fruit had been sold in advance of shipment.

The goods were delivered to the carrier on November 2, 1906, and should have been delivered at the point of destination not later than November 25th. They were not delivered until December 11th, too late for the holiday trade, and the parties to whom they were sold refused to accept same. The owner was, therefore, forced to resell the goods at the best price obtainable. The suit was for the difference between the price for which the goods had been sold before shipment and the price for which they were actually sold, together with the necessary expenses of reselling, and it was upon this basis the decree appealed from was rendered by the court.

It is the contention of appellant that the true measure of damages was the difference in market value between the time when the shipment should have arrived and the time it did actually arrive at Meridian. There is nothing in the record to show the market value of the goods at either of these dates; the shipper proceeded entirely upon the theory that he was entitled to recover the difference in the price for which he had contracted to sell the goods and the price for which they were actually sold.

The evidence does not show that the carrier was advised that the goods had been sold for the holiday trade when it issued its bill of lading. Where goods are sold to arrive within a certain time at a certain price, but the carrier is not informed of this fact, and knows nothing of the importance to the shipper of a prompt delivery, the carrier can be held liable only for the depreciation in the market value between the time when they should have been and the time when they are delivered.

Special damages can be recovered from the carrier for delayed transportation only where it is shown that the shipper informed the carrier, at the time the contract was made, of the special circumstances requiring prompt transportation and delivery. This is the rule in this state, and seems to be universal. *Express Co.* v. *Jennings,* 86 Miss. 329, 38 So. 374, 109 Am. St. Rep. 708; Elliott on Railroads, sec. 1730 *et seq.;* Hutchinson on Carriers, sec. 1367.

Appellant also contends that it is not liable for the negligence of its connecting lines; that it made a special contract with the shipper which limits its liability. The bill of lading contains this clause:

"To be carried upon the conditions expressed herein, to the company's freight station at El Paso, and there delivered in like good order to the consignee or owner, or to order of said consignee or owner, or to such company or carrier (if the same are to be forwarded beyond said station), whose line may be considered a part of the route to the place of destination of said goods or packages, it being distinctly stipulated that responsibility of this company shall cease at the station where delivered to such person or carrier."

It is said that the proof conclusively shows that the delay did not occur on appellant's line, and therefore, under the contract, it is not liable. It is earnestly insisted that the act of Congress commonly called the Carmack amendment to the Hepburn Act, approved June 29, 1906, imposes no liability on the initial carrier for a delay not caused by it but caused by the connecting carrier, in a case where the initial carrier and the shipper have entered into a contract exempting the initial carrier from all liability after it has safely and promptly transported the goods and delivered same to the connecting carrier. We quote that part of the act of Congress applicable to this case, as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a

point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed.''

Appellant argues:

''That there is quite a difference in imposing liability on the initial carrier for loss, damage, or injury to the goods themselves, and for consequential damages caused by a delay in transportation.''

We think this view of the act of Congress is too narrow. In our opinion there is a damage or injury to the goods themselves by a delay in transportation, when it is shown that the delay in transportation has caused the goods to depreciate in value in the market of their destination.

For the failure to prove any depreciation in the market value of the goods, the cause is reversed and remanded.

*Reversed and remanded.*