(84 South. 311)

WARLEY FRUIT & PRODUCE CO. v. LOUISVILLE & N. R. CO.
(1 Div. 350.)

(Court of Appeals of Alabama. Dec. 16, 1919.)

1. CONTRACTS ☞236—PARTIES MAY MODIFY OR WAIVE THEIR CONTRACTS.

It is entirely competent for the parties to a contract to modify or waive their rights under it and ingraft new terms so long as it is executory, but after performance new terms cannot be ingrafted.

2. CARRIERS ☞177(3)—AGREEMENT HELD A MERE MODIFICATION OF CONTRACT FOR INTERSTATE SHIPMENT SO THAT INITIAL CARRIER REMAINS LIABLE.

Where a shipment of sweet potatoes was still in the possession of the carrier and delivery had not been made, the party to whom offered having refused to accept, an agreement between the carrier and plaintiff commission firm to which the bill of lading had been assigned, for transportation to another point, etc., is merely a modification of the original contract, and hence where the original contract was interstate and the agreement was made with the initial carrier, such initial carrier remains liable under the Carmack Amendment for the negligence of connecting carriers; no new contract having been made.

Appeal from Circuit Court, Mobile County; Saffold Berney, Judge.

Action for damages by reason of negligent delay in the transportation of a carload of potatoes, by the Warley Fruit & Produce Company against the Louisville & Nashville Railroad Company. From a judgment of nonsuit taken by plaintiff under the statute, plaintiff appeals. Reversed and remanded.

Armbrecht, Johnston & McMillan, of Mobile, for appellant.

An initial common carrier is liable to a shipper, although it has tendered delivery of freight to the consignee, where subsequent to such tender there is a reconsignment of the freight based upon a valid consideration, although the damage occurs on the line of the connecting carrier after the agreement of reconsignment had been entered into. 108 Miss. 749, 66 South. 209; 126 Mo. App. 244, 102 S. W. 1029; 105 Ill. App. 171; 262 Ill. 400, 104 N. E. 666, Ann. Cas. 1915B, 89; 188 Ala. 354, 66 South. 14; 108 Ala. 354, 18 South. 844; 88 Ala. 443, 6 South. 762; 183 Ala. 172, 62 South. 698.

Smiths, Young & Leigh, of Mobile, for appellee.

An interstate shipment loses its interstate character on reaching the point specified in the original contract, and its further transportation to another point within the state on the order of the consignee is controlled by the law of the state, and not by the Interstate Commerce Act. 204 U. S. 403, 27 Sup. Ct. 360, 51 L. Ed. 540; 233 U. S. 334, 34 Sup. Ct. 592, 58 L. Ed. 988; 249 Fed. 913, 162 C. C. A. 111; 188 Ala. 248, 66 South. 438. Where the delivering carrier in an interstate shipment becomes liable only as a warehouseman, the initial carrier is no longer liable under the Carmack Amendment. 183 Ala. 172, 62 South. 698; 181 Iowa, 1052, 165 N. W. 367, L. R. A. 1918B, 622; 136 Tenn. 211, 188 S. W. 936; 190 Mo. App. 458, 177 S. W. 756.

SAMFORD, J. There was much pleading in the case, but, as is admitted by both parties in brief, the entire controversy is composed in the eighth count of the complaint, the pleas thereto and the demurrers to those pleas. The demurrers were overruled, and the count and pleas were as follows:

"Plaintiff claims of the defendant $530.25, damages for that on, to wit, the 26th day of February, 1913, one A. Freeland delivered to the Louisville & Nashville Railroad Company, at Grand Bay, Ala., one carload of sweet potatoes, which the defendant accepted for shipment and transportation, as a common carrier, over its line and its connections to Austin, Tex., for a reward, and issued to the said A. Freeland a bill of lading evidencing such contract of shipment, which bill of lading was thereafter assigned to plaintiff; that on, to wit, the 3d day of March, 1913, defendant, under instructions from the Warley Fruit & Produce Company, offered said potatoes for delivery to the Quebedeaux Fruit Company; that thereafter, on, to wit, the 5th day of March, 1913, the Quebedeaux Fruit Company declined to receive said potatoes; that on, to wit, the 5th day of March, 1913, the plaintiff and defendant mutually agreed to change said contract of shipment by changing the point of destination of such shipment of potatoes to Waco, in the state of Texas; that plaintiff agreed to pay the defendant and its connections the legal and proper through rate of freight on said shipment from Grand Bay, Ala., to Waco, Tex., and defendant agreed, as a common carrier, to transport said shipment, as a common carrier, over its lines and the lines of its connections, and deliver the same within a reasonable time to E. F. Drake & Co., Waco, Tex., for the benefit of plaintiff. Thereupon, defendant's agent, at Mobile, Ala., W. M. Boykin, acting within the line and scope of his authority, changed the bill of lading evidencing such contract of shipment, by indorsing thereon certain words and figures as follows, to wit: 'Reconsigned to E. F. Drake & Company, Waco, Texas. 3/5/13. W. M. Boykin, Agent.'

"Plaintiff avers that the defendant breached its said contract in this: That the defendant and its connecting lines did not transport said cargo of sweet potatoes within a reasonable time to Waco, Tex., and there deliver the same E. F. Drake & Co., but avers that said car of potatoes was delivered to the defendant on, to wit, the 26th day of February, 1913; that it did not reach Waco, Tex., until March 8, 1913, and that said E. F. Drake & Co. was not notified by the defendant and its connections of the arrival of said cargo of said sweet potatoes at Waco, Tex., until the 10th day of March, 1913.

"And plaintiff avers that the time which elapsed between the delivery of said sweet potatoes to the defendant at Grand Bay, Ala., and the date of the notification to consignee of the arrival of said sweet potatoes in Waco, Tex., to wit, 12 days, was an unreasonable time to be consumed in the transportation of a carload of sweet potatoes from Grand Bay, Ala., to Waco, Tex., and that as a direct and proximate result of the unreasonable delay by the defendant and its connecting carriers in the transportation of such sweet potatoes, and in notifying the said E. F. Drake & Co. of the arrival of said sweet potatoes, the said sweet potatoes, when offered for delivery to the said E. F. Drake & Co., were in a damaged, decayed, and rotten condition, to the plaintiff's damage in the sum of $530.25, which sum of money, with interest thereon, is due and unpaid, and for which plaintiff sues.

"Armbrecht, Whit & McMillan,
"Attorneys for Plaintiff."

Pleas 1, 2, 3, 4, and 5.

"Comes the defendant, in the above-entitled cause, and pleads, in short by consent, the general issue, to the first, second, third, fourth, and fifth counts of the complaint.

"Second Plea. And for further plea to all of said counts, and each of them, the defendant says that section 2 of the contract of shipment in this case is, in words and figures, as follows: 'Sec. 2. In issuing this bill of lading this company agrees to transport only over its own line, and except as otherwise provided by law acts only as agent with respect to the portion of the route beyond its own line. No carrier shall be liable for loss, damage, or injury not occurring on its own road or its portion of the through route, nor after said property has been delivered to the next carrier, except as such liability is or may be imposed by law.' And defendant says that said goods were consigned, in said bill of lading or contract of shipment, to the Warley Fruit & Produce Company, at Austin, Tex., and that said goods were safely transported and delivered within a reasonable time by the Louisville & Nashville Railroad Company to the Texas & Pacific Railway Company, at New Orleans, La., and safely transported within a reasonable time by the Texas & Pacific Railway Company to Austin, Tex., and were, upon arrival in said Austin, Tex., under instructions from the Warley Fruit & Produce Company, and within a reasonable time offered for delivery to the Quebedeaux Fruit Company, of Austin, Tex., and that the Quebedeaux Fruit Company refused to accept said goods, and that when offer of the delivery of said goods was made to said Quebedeaux Fruit Company the liability of this defendant, as common carrier, under the contract of shipment ceased.

"Third Plea. And for further plea to all of said counts, and each of them, the defendant says that section 2 of the contract of shipment in this case is as is set out in the second plea herein, which part of said plea is made a part of this plea. And defendant says that said goods were consigned, in said bill of lading, to the Warley Fruit & Produce Company at Austin, Tex., and that said goods were safely delivered, within a reasonable time, by the defendant herein, to the Texas & Pacific Railway Company at New Orleans, La., and were safely transported within a reasonable time by said Texas & Pacific Railway Company to Austin, Tex., and were, upon their arrival in Austin, Tex., under instructions of the Warley Fruit & Produce Company, offered for delivery to the Quebedeaux Fruit Company, of Austin, Tex., and that said Quebedeaux Fruit Company refused and declined to receive said goods, and that, after said refusal the Warley Fruit & Produce Company had said freight reconsigned to order Warley Fruit & Produce Company, notify E. F. Drake & Co., Waco, Tex., and that shipment of said freight was made, from Austin, Tex., to Waco, Tex., over the International & Great Northern Railway Company, an independent common carrier, with which the defendant herein had no direct connection, and after the contract of carriage between the plaintiff and defendant herein had been completed by the offer to deliver the said freight in Austin, Tex., as aforesaid.

"Fourth Plea. And for further plea to said counts, and each of them, the defendant says that said car of sweet potatoes were loaded by one A. Freeland and delivered by him to the defendant herein to be shipped from Grand Bay, Ala., to the Warley Fruit & Produce Company, at Austin, Tex.; that said car of potatoes was transported by the defendant and its connecting carrier, in safety and without unreasonable delay, to Austin, Tex., and that, upon arrival of said car at Austin, Tex., the said connecting carrier, under instructions from the Warley Fruit & Produce Company, promptly and without unreasonable delay offered said car of potatoes for delivery to the Quebedeaux Fruit Company, but the said Quebedeaux Fruit Company declined to receive said potatoes, and thereupon the Warley Fruit & Produce Company caused said car of potatoes to be shipped to Waco, Tex. And defendant avers that it only undertook to carry said potatoes and to deliver them safely, within a reasonable time at Austin, Tex., and that its liability as common carrier terminated when it tendered said potatoes for delivery to the Quebedeaux Fruit Company as aforesaid.

"Fifth Plea. And for further plea to said counts, and each of them, defendant says that said car of potatoes was safely transported, expeditiously and without unreasonable delay, from Grand Bay, Ala., to Austin, Tex., and was there offered and tendered for delivery, in accordance with the contract of shipment, and that any damaged condition of said potatoes, when they were offered for delivery in Austin, Tex., was due to improper loading by the shipper thereof, or the inherent defect or vice of said potatoes, and not because of any neg-

ligence or fault of the defendant or its connecting carrier.

"Sixth Plea. And for further plea to all of said counts, and to each of them, defendant says that section 2 of the contract of shipment in this case is set out in the second plea herein, which part of said plea is made a part of this plea. Defendant says: That said goods were consigned in said bill of lading to the Warley Fruit & Produce Company at Austin, Tex., and that said goods were safely transported and offered for delivery within a reasonable time to the Quebedeaux Fruit Company at Austin, Tex., by the said defendant and its connecting carrier as follows, to wit: Said car of potatoes left the point from which they were shipped at Grand Bay, Ala., at or about 7 o'clock p. m. on February 26, 1913, and was hauled to New Orleans, La., over the defendant's railroad, and was there delivered to defendant's connecting carrier, the Texas & Pacific Railway Company, at 4 p. m. on February 27, 1913, that it was transported from said city of New Orleans, La., over the line of the said Texas & Pacific Railway Company to Longview Junction, and there delivered to the International & Great Northern Railway Company at 2:10 a. m. on March 1, 1913, and was transported over the rails of said last-mentioned carrier to Austin, Tex., at which place it arrived at 6 a. m. on March 3d, and under instructions of the Warley Fruit & Produce Company was immediately offered for delivery to the Quebedeaux Fruit Company, and by the Quebedeaux Fruit Company was ordered placed upon the interchange tracks of the Missouri, Kansas & Texas Railroad Company at Austin, Tex., where it remained, subject to the order and disposal of the Quebedeaux Fruit Company, until 4 p. m. on March 5, 1913, and was then refused by them. That in the transportation of said car of potatoes from Grand Bay, Ala., to Austin, Tex., it was necessary that various switching movements of said car be made from one railroad to another, as, delivery in New Orleans, La., from the Louisville & Nashville Railroad Company to the Texas & Pacific Railway Company, at Longview Junction, from the Texas & Pacific Railway Company to the International & Great Northern Railway Company, and after the tender of said car for delivery in Austin, Tex., another switching movement was necessary, under the order of the said Quebedeaux Fruit Company, from the International & Great Northern to the Missouri, Kansas & Texas Railroad Company, and in addition to said switching movements it was necessary that said car should be ferried across the Mississippi river at or near New Orleans, La."

[1, 2] Which, concretely stated, presents the following question: Is an initial common carrier liable as such to a shipper, although it has tendered delivery of freight to the consignee and the consignee has assumed control of the shipment, but leaving the possession in the consignor, where subsequent to such tender and assumption of control there is a reconsignment of the freight based upon a valid consideration, although the damage occurs on the line of a connecting carrier after the agreement of reconsignment has been entered into? And

this to our mind is to be determined by ascertaining whether the additional service contracted for is a modification of the original contract of affreightment, or whether it is within itself an independent contract. If it is only a modification of the original contract, then the shipment would be governed by the terms of the Carmack Act governing interstate shipments, and the defendant would be liable for the negligence of its connecting carrier. So. P. R. R. Co. v. Lyon & Co., 107 Miss. 777, 66 South. 209, Ann. Cas. 1917D, 171. If, on the other hand, the contract is new and independent, the plea of defendant, to the effect that the damage was due to the negligence of the delivering carrier, would be good. L. & N. R. R. Co. v. Brewer, 183 Ala. 172, 62 South. 698. This question is to be determined by ascertaining whether the original contract of shipment had been completed at the time of the agreement to make delivery at Waco. It is entirely competent for the parties to a contract to modify or waive their rights under it and ingraft new terms upon it. 6 R. C. L. 914. But this must be done while the contract is executory, and cannot be done after performance. In the case of G., C. & Santa Fé Ry. Co. v. Texas, 204 U. S. 403, 27 Sup. Ct. 360, 51 L. Ed. 540, the shipment of corn was delivered to the consignee at Texarkana, Tex., and reshipped on a new bill of lading by the consignee to another party, and to another point in Texas, the bill of lading upon its face showing only a local transportation. In the opinion the justice, writing for the court, used this expression:

"Neither the Harroun [original consignor] nor the Hardin Company [original consignee] changed or offered to change the contract of shipment, or the place of delivery."

When the Hardin Company accepted the corn at Texarkana, Tex., the transportation contract ended. The final conclusion in the case was grounded upon the fact that the original consignee accepted and made payment for the shipment. The case of Chi., Mil. & St. Paul Ry. v. Iowa, 233 U. S. 334, 34 Sup. Ct. 592, 58 L. Ed. 988, was also a reshipment by the consignee after acceptance. The same is true of the case of Settle v. B. & O. S. W. R. Co., 249 Fed. 913, 162 C. C. A. 111. But the case at bar presents a different proposition in that, at the time of the modification of the contract of shipment, the potatoes were still in the possession of the carrier, and, while the car had reached its original destination, the shipment was still undelivered. The contract was therefore executory and subject to modification, and simply because it was modified did not change it from an interstate to an intrastate shipment. It was not a new contract in the sense that the original contract had been completed, but the modification became merg-

ed into and became a part of the, original agreement between the parties.

It follows that the court erred in its rulings on this point. The demurrers to the pleas raising this point should have been sustained.

The judgment of the court is reversed, and the cause is reinstated on the docket to be tried upon its merits.

Reversed and remanded.