(114 So. 295)

### CLARK v. LOUISVILLE & N. R. R. CO.
(3 Div. 809.)

Supreme Court of Alabama. Oct. 20, 1927.

**I. Carriers** ⟨key⟩**184—Complaint against initial carrier for delay to diverted interstate shipment, not naming consignee, or alleging diversion before reaching destination, failed to state cause of action (Carmack Amendment to Interstate Commerce Act [49 USCA § 20, subd. 11]).**

In shipper's suit to recover damages caused by delay in transporting interstate shipment of potatoes, which had been diverted, brought against initial carrier under Carmack Amendment to Interstate Commerce Act (49 USCA § 20, subd. 11 [U. S. Comp. St. § 8604a]), counts showing that bill of lading was for shipment from Castleberry, Ala., to Cincinnati, but that damages sought to be recovered were for delay in arrival in Detroit, Mich., failing to allege name of consignee who was presumptive owner of goods, or that shipper had legal right to divert shipment, or that diversion was made before goods reached point of destination, were insufficient to state cause of action against initial carrier.

**2. Carriers** ⟨key⟩**177(3)—Initial carrier's obligation ceases when interstate shipment reaches destination in good condition, to which they were originally intended or consigned (Carmack Amendment to Interstate Commerce Act [49 USCA § 20, subd. 11]).**

Under Carmack Amendment to Interstate Commerce Act (49 USCA § 20, subd. 11 [U. S. Comp. St. § 8604a]), affirmatively requiring issuance by initial carrier of bill of lading for goods delivered in interstate shipment, and expressly relating to property transported on through bill of lading, obligation of initial carrier ceases when goods reach destination to which they were originally intended or consigned in good condition.

**3. Carriers** ⟨key⟩**76—Bill of lading prima facie transfers title to goods shipped to consignee who alone can sue carrier for loss or injury to goods.**

Prima facie bill of lading operates as transfer to consignee of title to goods shipped, and, in absence of evidence removing presumption, action against carrier for failure to deliver or for loss or injury to goods while in its possession lies only at suit of consignee.

**4. Carriers** ⟨key⟩**80—Owner may divert shipment during transit, but not after destination has been reached.**

Owner of goods shipped may change instructions as to their destination, and substitute different place of delivery during transit, but not after destination has been reached and terms of carrier's obligation fulfilled.

**5. Carriers** ⟨key⟩**185(1)—Diversion of shipment to new parties is presumed to be under new bill of lading to new consignee.**

Where interstate shipment was diverted under shipper's instructions, presumption, in absence of anything to the contrary, is that new bill of lading was issued with person to whom delivery was to be made as consignee.

**6. Carriers** ⟨key⟩**184—Complaint for delay to interstate shipment, diverted by original consignee, not showing shipment was under through bill of lading, did not state cause of action against initial carrier (Carmack Amendment to Interstate Commerce Act [49 USCA § 20, subd. 11]).**

In shipper's suit for damages from delay in interstate shipment of potatoes brought against initial carrier under Carmack Amendment to Interstate Commerce Act (49 USCA § 20, subd. 11 [U. S. Comp. St. § 8604a]), count alleging that shipper was named as consignee, and diverted shipment to other points of delivery, but failing to show that shipment moved on through bill of lading rather than separate shipments under separate bills of lading, did not state cause of action against initial carrier.

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Carriers ⊛⟶23—Suit against initial carrier for damages to shipment diverted held unaffected by subsequent amendment to statute, including diverted shipments in carrier's liability (Interstate Commerce Act, § 20, par. II, as amended by Act Cong. July 3, 1926 [44 Stat. 835]).**

Interstate Commerce Act, § 20, par. 11, as amended by Act Cong. July 3, 1926 (44 Stat. 835), providing that liability of carrier shall apply in case shipment is reconsigned or diverted, has no effect on prior suit against initial carrier for damage to shipment diverted, but would indicate that Congress construed preexisting statute as not to include shipment which has been reconsigned or diverted.

Appeal from Circuit Court, Conecuh County; John D. Leigh, Judge.

Action by C. W. Clark against the Louisville & Nashville Railroad Company. Plaintiff takes a nonsuit, and appeals from adverse rulings on pleading. Transferred from Court of Appeals under Code 1923, § 7326. Affirmed.

Count 2 of the complaint is as follows:

"The plaintiff claims of the defendant the like sum of $1,000, for that, on, to wit, the 15th day of ·June, 1923, and at all times thereafter, the defendant, together with its connecting carriers, was engaged as a common carrier in the transportation of. goods and merchandise between the town of Castleberry, Ala., and Detroit, Mich., and for that, on, to wit, June 15, 1923, the plaintiff delivered to the defendant at Castleberry, Ala., 240 bags of potatoes, and which the defendant received and executed a bill of lading, in which it contracted to deliver the same at Cincinnati, Ohio, or such point of destination to which the plaintiff might divert the same, and deliver the same to such destination within reasonable length of time; and the plaintiff avers that, on, to wit, the 17th day of June, 1923, such shipment was diverted to Toledo, Ohio, and on, to wit, the 20th day of June, said shipment was diverted from Toledo, Ohio, to Detroit, Mich.; that defendant failed to deliver said shipment to Detroit within a reasonable length of time; and that, by reason of such failure, said shipment became spoiled, and totally unfit for the market, all to the damage of the plaintiff in the sum hereinabove claimed."

Count 4 is as follows:

"The plaintiff claims of the defendant the sum of $1,000, for that, on, to wit, the 15th day of June, 1923, and at all times thereafter, the defendant, together with its connecting carriers, was engaged as a common carrier in the transportation of goods and merchandise between the town of Castleberry, Ala., and the city of Detroit, Mich., and for that, on, to 'wit, June 15, 1923, the plaintiff delivered to the defendant at Castleberry, Ala., a carload of potatoes, which the defendant accepted for shipment and transportation as a common carrier over its line and its connections to Cincinnati, Ohio, for a reward, and issued to plaintiff a bill of lading evidencing such contract of shipment; that on, to wit, the 17th day of June, 1923, the plaintiff and defendant mutually agreed to change said contract of shipment by. changing the point of destination of such shipment of potatoes to Toledo, Ohio; that plaintiff agreed to pay the defendant and its connections a legal and proper rate of freight on such shipment from Castleberry, Ala., to Toledo, Ohio, and defendant agreed to carry such shipment to Toledo, Ohio, and there deliver the same to Hendrix-Jones Company; that thereafter, on, to wit, June 20, 1923, the plaintiff and defendant mutually agreed to change the destination of said shipment to Detroit, Mich., and the plaintiff agreed. to pay the defendant and its connections the legal and proper through rate on shipment from Castleberry, Ala., to Detroit, Mich., and defendant agreed as a common carrier to transport said shipment over its lines and the lines of its connecting carriers, and deliver the same within a reasonable length of time to Edward Reid & Son, and plaintiff avers that defendant breached its said contract in this: That the defendant did not transport said carload of potatoes within a reasonable length of time to Detroit, Mich., and there deliver the same to Edward Reid & Son, and avers that .said shipment did not reach Detroit, Mich., until June 25, 1923, and that Edward Reid & Son was not notified of the arrival of said shipment of potatoes until June 25, 1923; that plaintiff avers that the time which elapsed between the delivery of said potatoes to the defendant at Castleberry, Ala., and the date of the notification to Edward Reid. & Son of the arrival of the said potatoes in Detroit, Mich., was an unreasonable time to be consumed in the transportation of a carload of potatoes from Castleberry, Ala., to Detroit, Mich.; and that, as a direct and proximate result of the unreasonable delay by the defendant and its connecting carriers in the transportation of said potatoes, and not notifying the said Edward Reid & Son of the arrival of said potatoes, said potatoes, when offered for delivery, were in a damaged, decayed, and rotten condition, to plaintiff's damage in the sum hereinabove sued for, which sum, with interest, is due and unpaid."

Count 4, as amended, is as follows:

"The plaintiff claim of the defendant the sum of $1,000, for that, on, to wit, the 15th day of June, 1923, and at all times thereafter, the defendant, together with its connecting carriers, was engaged as a' common carrier in the transportation of goods and merchandise between the town of Castleberry, Ala., and the city of Detroit, Mich., and for that, on, to wit, the 15th day of June, 1923, the plaintiff delivered to the defendant at Castleberry, Ala., a carload of potatoes which the defendant accepted for shipment and transportation to be carried to Cincinnati, Ohio, for a reward, and there to be delivered to the plaintiff, and issued to the plaintiff a bill of lading evidencing such contract of shipment, and the plaintiff further avers that, on, to wit, the 17th day of June, 1923, the plaintiff did in writing notify J. R. Glass, agent of the defendant at Castleberry, Ala., to divert such shipment, which said diversion is in words and figures as follows: 'June 17, 10 a. m., 1923, divert car S. A. A. P. 8493 billed to C. W. Clark, Cincinnati, Ohio, to the Hendricks, Jones Company to Toledo, Ohio. Route best for

quickest delivery. C. W. Clark'; that defendant, through and by its agent, J. R. Glass, who was acting in the scope of his employment, did divert said shipment in accordance with said diversion order, and that the plaintiff did agree to pay the defendant and its connections a legal, proper rate of freight on such shipment from Castleberry, Ala., and defendant agreed to carry such shipment to Toledo, Ohio, and there deliver the same to Hendricks, Jones & Co.; that, on, to wit, June 20, 1923, the plaintiff did give to the defendant's agent, J. R. Glass, the following notice in writing: 'June 20, 4:30 p. m., 1923. To J. R. Glass, Agent: Divert S. A. A. P. 8493 billed to the Hendricks-Jones Company to Toledo, Ohio, to Edward Reed & Son, Detroit, Mich. Route for quickest delivery. C. W. Clark;' that defendant, through J. R. Glass, who was acting in the scope of his employment, did divert such shipment in accordance with said order, and the plaintiff did agree to pay the defendant and connecting carriers a legal, proper, through rate of freight on such shipment from Castleberry, Ala., to Detroit, Mich., and defendant agreed, as a common carrier, to transport said shipment over its lines and the lines of its connecting carriers, and deliver the same within a reasonable length of time to Edward Reed & Son, and plaintiff avers that the defendant breached this contract in this: That the defendant did not transport said car of potatoes in a reasonable time to Detroit, Mich., and there deliver the same to Edward Reed & Son, but avers that said shipment did not reach Detroit, Mich., until June 25, 1923, and that Edward Reed & Son was not notified of the arrival of said shipment until June 25, 1923. The plaintiff avers that the time which elapsed between the delivery of said potatoes to the defendant at Castleberry, Ala., and the date of said arrival of said potatoes at Detroit, Mich., was an unreasonable time to be consumed in the transportation of the carload of potatoes from Castleberry, Ala., to Detroit, Mich., and that, as a direct proximate result of such unreasonable delay by the defendant and its connecting carriers in the transportation of said potatoes, said potatoes, when offered for delivery, were in a damaged, decayed, and rotten condition, and were refused by Edward Reed & Son—all to the damage of the plaintiff in the sum hereinabove claimed and sued for."

Sternfeld & Lobman, of Montgomery, and Jones & Jones, of Evergreen, for appellant.

Count 2 states sufficient facts to constitute a cause of action. B. & O. R. Co. v. Montgomery & Co., 19 Ga. App. 29, 90 S. E. 740. Count 4 and amended count 4 are sufficient. Warley Fruit & Prod. Co. v. L. & N. R. Co., 17 Ala. App. 263, 84 So. 311; Ala. Mid. R. Co. v. Darby & Son, 119 Ala. 531, 24 So. 713; 6 R. C. L. 914.

Steiner, Crum & Weil, of Montgomery, and Hamilton & Jones, of Evergreen, for appellee.

It was necessary that plaintiff allege the retention of some interest in the shipment which would give him a right to divert or reconsign same. L. & N. v. Allgood, 113 Ala. 163, 20 So. 986. The initial carrier is required to issue a bill of lading when it receives property for transportation. U. S. Comp. St. 1918, § 8604a; Adams Ex. Co. v. Croninger, 226 U. S. 491, 33 S. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Code 1923, § 10043. Defendant is not liable for any damages to the shipment occurring after it reached Cincinnati, the destination in the original bill of lading. R. C. L. 908; P. M. R. Co. v. French & Co., 254 U. S. 538, 41 S. Ct. 195, 65 L. Ed. 391; Bracht v. S. A. & A. P., 254 U. S. 489, 41 S. Ct. 150, 65 L. Ed. 336; 1 Roberts, Fed. Liab. Cor. § 346; Parker-Bell Co. v. G. N. R. Co., 69 Wash. 123, 124 P. 389, 41 L. R. A. (N. S.) 1064; Barrett v. N. P. R. Co., 29 Idaho, 139, 157 P. 1016.

GARDNER, J. This suit is by the appellant against appellee to recover damages growing out of delay in the transmission and delivery of a carload of potatoes received originally by the defendant as initial carrier for shipment from Castleberry, Ala., to Cincinnati, Ohio.

Demurrers to counts 1 and 3 were overruled, but sustained as to counts 2 and 4, and count 4 as amended. By reason of the adverse ruling of the court as to these latter counts, plaintiff suffered a nonsuit, and appeals to review the action of the court in sustaining said demurrer to counts 2, 4, and 4 as amended.

[1] The shipment was interstate, and recovery is sought against defendant as initial carrier under the provisions of what is known as the Carmack Amendment to the Interstate Commerce Act of Congress. U. S. Code, tit. 49, § 20, subd. 11 (49 USCA § 20, subd. 11; U. S. Comp. St. § 8604a). We are of the opinion the trial court correctly ruled in holding these counts insufficient as stating a cause of action against the initial carrier under the above-noted statute.

[2] An affirmative requirement of the statute is the issuance by the initial carrier of a bill of lading for the goods delivered for such interstate shipment (Adams Express Co. v. Croninger, 226 U. S. 491, 33 S. Ct. 148, 57 L. Ed. 314, 44 L. R. A. [N. S.] 257), and by express terms relates to property "transported on a through bill of lading." "The obligation of the initial carrier ceases when the goods reach the destination in good condition to which they were originally intended or consigned." 1 Roberts Fed. Liability of Carrier, § 346.

In Pere Marquette R. Co. v. French & Co., 254 U. S. 538, 41 S. Ct. 195, 65 L. Ed. 391, there was involved an alleged wrongful delivery in an interstate shipment, and in discussing the question the court said:

"Having brought the goods to the destination named in the bill of lading the carrier's only duty under its contract was to make a delivery at that place; and it could make that delivery by turning the goods over to another carrier for further carriage. * * * The fact that in for-

warding the car the Big Four used the original waybill, striking out the word 'Louisville' under the 'destination' and substituting 'Dumesnil, Ky. So. R. R.' is of no significance. The shipment from Louisville to Dumesnil was a wholly new transaction. In turning over the car for this new shipment the railway made a disposal of it in assumed termination and discharge of its obligations, which was, in legal contemplation, a delivery."

The case of Parker-Bell Lumber Co. v. Great Northern R. Co., 69 Wash. 123, 124 P. 389, 41 L. R. A. (N. S.) 1064, supports the following text in 4 R. C. L. 908, to which it is cited:

"This liability, however, cannot be extended beyond the contract evidenced by the bill of lading; and that is, to deliver the shipment at the place of destination therein named. Any damage * * * under a new bill of lading, cannot be recoverable against the initial carrier in the first bill of lading, whose contract and whose liability for damages, whether occurring upon its own line or that of any connecting line, cannot be extended beyond the destination fixed in the bill of lading."

[3] It is recognized as the general rule "that prima facie a bill of lading operates [as] a transfer to the consignee of the title to the goods shipped; and in the absence of evidence removing the presumption, an action against the carrier for failure to deliver, or for * * * loss or injury to the goods while in his possession, will lie only at the suit of the consignee." Louisville & N. R. Co. v. Allgood, 113 Ala. 163, 20 So. 986.

[4] "The owner of goods shipped—and prima facie the consignee is the owner—may change his instructions as to their destination, and substitute a different place of delivery; but this * * * he must do during the transit, and not after their destination has been reached, and the terms of the carrier's obligation have been fulfilled." Melbourne & Troy v. L. & N. R. Co., 88 Ala. 443, 6 So. 762; 2 Hutchinson on Carriers (2d Ed.) §§ 660 and 735.

The counts here in question each disclose that the bill of lading issued was for shipment from Castleberry, Ala., to Cincinnati, Ohio. The damages sought to be recovered, however, are for delay in arrival of the shipment at Detroit, Mich. Count 2 fails to allege the name of the consignee or to show that plaintiff had the legal right to divert the shipment; the consignee being the presumptive owner of the goods. For aught appearing in this count, the goods may have reached the point of destination and defendant's legal obligation met at the time of said alleged diversion and delivered to another carrier under a new bill of lading.

These observations are likewise applicable to count 4 as originally framed, as this count also fails to allege to whom the shipment was consigned.

[5] Count 4, as amended, is more specific, showing that, in the bill of lading issued for the shipment to Cincinnati, the plaintiff was named as consignee. It further appears, however, that from Cincinnati the shipment was diverted under plaintiff's instructions to Hendricks-Jones Company, Toledo, Ohio, and for aught appearing therein this shipment was under a new bill of lading or a reconsignment with Hendricks-Jones Company named as consignee. It is then alleged that the shipment was again diverted to Detroit, Mich., to Edward Reed & Son, but the presumption would also be indulged, the absence of anything to the contrary, that a bill of lading was issued for this shipment with Edward Reed & Son named as consignee.

[6] Under the rules of law above noted, this count does not show a legal right on plaintiff's part to divert the shipments, and fails to show that the shipment moved on a through bill of lading or was a through shipment under the federal statute. So far as appears, there may have been three separate shipments under as many separate bills of lading.

A somewhat similar situation involving a diversion of the shipment was presented in Parker-Bell Lumber Co. v. Great Northern R. Co., supra, wherein the court used the following language, here pertinent:

"Appellant's argument is that, under the act regulating interstate commerce * * * the initial carrier must issue a through bill of lading, and becomes liable to the shipper for all damages caused by any connecting line. It may be so conceded. This liability, however, cannot be extended beyond the contract evidenced by the bill of lading; and that is, to deliver the shipment at the place of destination therein named. Any damage to the shingles while en route from Kankakee, Illinois, to Palisades, New Jersey, under orders from appellant, and without the knowledge of respondent, under a new bill of lading, cannot be recoverable against the initial carrier in the first bill of lading, whose contract and whose liability for damages, whether occurring upon its own line or that of any connecting line, cannot be extended beyond the destination fixed in the bill of lading."

Appellant cites the cases of Warley Fruit & Produce Co. v. L. & N. R. Co., 17 Ala. App. 263, 84 So. 311, and Baltimore & Ohio R. Co. v. Montgomery & Co., 19 Ga. App. 29, 90 S. E. 740. In these authorities the courts merely construed the facts there presented as disclosing a through shipment under the original bill of lading.

No such situation is presented by the averments of the pleadings in the instant case, and these authorities do not, therefore, in our opinion, support appellant's contention here.

Counsel for appellant direct attention to an amendment to the statute passed subsequent to the institution of this suit, and insist that, although it could have no bearing on this particular case, the passage of the

amendment by Congress was intended only as a declaration of the pre-existing rule of law. The amendment was by the Act of July 3, 1926, amended subdivision 11 of section 20 of Title 49 of the United States Code, and is found on page 2119 of said Code (44 Stat. 885). The pertinent portion of the amendment is as follows:

"And provided further, That the liability imposed by this paragraph shall also apply in the case of property reconsigned or diverted in accordance with the applicable tariffs filed as in this Act provided."

[7] This amendment, being subsequent to this suit, is without influence thereon, but, if to be looked to for any purpose, would rather indicate that Congress entertained the view that the pre-existing statute did not include a shipment, where there had been a reconsignment or diversion, and that a change in that respect was desirable.

We are persuaded the plaintiff has failed to state a case within the influence of the federal statute controlling at the time of the institution of this suit, and that the demurrers were properly sustained.

The judgment will be accordingly affirmed. Affirmed.

ANDERSON, C. J., and SAYRE and BOULDIN, JJ., concur.