Chase & Company, a Corporation, *Plaintiff in Error*, v. Florida East Coast Railway Company, a Corporation, *Defendant in Error*.

Division B.

Opinion Filed December 20, 1927.

*Martin H. Long*, for Plaintiff in Error;

*Robert H. Anderson*, for Defendant in Error.

Whitfield, J.—Chase and Company, a corporation, brought an action against the Florida East Coast Railway Company, a corporation, as the initial carrier for damages to interstate shipments of tomatoes, in 1923. There was a plea of not guilty. The court adjudged the defendant not guilty and plaintiff took writ of error to a judgment for defendant.

The defendant railway company operates a line of railroad situated wholly and only in the State of Florida. It connects at Jacksonville, Florida, with the Atlantic Coast

Line Railway and other railroads leading to points in other States.

Under the Federal Statute any common carrier receiving property for interstate transportation from a point in one State to a point in another State, shall be liable for any loss, damage or injury to such property, caused by it or by any common carrier to which such property may be delivered or over whose line said property may pass ''when transported *on a through bill of lading.*'' See U. S. Code, p. 2119, 8 Compl. Stats. 1916, Sec. 8604a, p. 9289.

In this case it is stipulated that on March 11, 1923, shipments of tomatoes were received by the defendant company on its line, at Perrine, Florida, in an A. C. L. R. R. car, for which the defendant company issued and delivered to the shipper the defendants' duly signed bill of lading for the transportation of the tomatoes by defendant on its own line and connecting lines, ''route F. E. C. and A. C. L.,'' from the point of origin in Florida to the City of Waycross, Georgia; that the tomatoes arrived in good condition over the Atlantic Coast Line railroad at the switching yards in the City of Waycross, Georgia, at 2:50 P. M., March 13, 1923; that at 4:45 P. M. March 13, 1923, the Atlantic Coast Line Railroad Company received instructions from plaintiff to divert and transport the tomatoes to plaintiff at Potomac Yards, Virginia; with instructions to ''keep vents closed;'' that the tomatoes were moved from Waycross, Ga., by the Atlantic Coast Line Railroad Company, to Richmond, Va., and there delivered to a connecting carrier by which the shipment was transported to Potomac Yards, Va., reaching there 11:41 P. M. March 15, 1923; that at 4:10 P. M. March, 17, the R. F. & P. R. R. Co., and Penn. R. R. Co., received at Potomac Yards, Va., instructions from plaintiff Chase & Co., to reconsign and transport the tomatoes to plaintiff at Wilkes-Barre, Pa., with instructions

to advise K. Bros. there, upon arrival of the tomatoes, and to transport said tomatoes under such ventilation as necessary to protect in case of freezing weather. The shipment arrived at Wilkes-Barre at 4:05 P. M. March 19; it having been transferred by the Penn. R. R. Co., to another car, K. Bros. were notified of the arrival at 9:30 A. M. March 20, and after inspection refused to accept the tomatoes because of their injured and decayed condition. The tomatoes were sold greatly below the market price for good and sound tomatoes, "all by reason of the faulty and negligent transportation and ventilation between Waycross, Ga., and final destination." It is also stipulated:

"10. That there was no act of negligence on the part of the defendant, either in transporting or handling said shipment so far as its own lines are concerned or with the Atlantic Coast Line Railroad Company prior to arrival at Waycross, Georgia.

11. That the freight was paid to the final and delivering carrier on said shipment in a sum equivalent to the through rate from origin to actual final destination as provided in the tariff carrying through rates.

12. That no delivery of said shipment was made to the plaintiff or consignee at either Waycross, or Potomac Yards, but the shipment was available for delivery if desired; that the shipper did not contemplate delivery at either of said points and the defendant did not know where the shipper intended to have delivery made; that Waycross is not a wholesale market for shipments of the amount and kind here involved, which the defendant knew when it accepted said shipment; that said shipment when made was intended for diversion in accordance with common practice, which was sufficient to put the defendant on inquiry.

13. That all times herein mentioned the defendant had

on file with the Interstate Commerce Commission, a tariff covering the transportation of fruits and vegetables in car loads, known as Florida East Coast Fruit and Vegetable Tariff No. 10, I. C. C. No. 529, which contained *inter alia* the following: "Rules and Regulations for Re-consigning and Diversion of Fruits and Vegetables in Carloads."

"Rules and Regulations for Reconsigning and Diversion of Fruits and Vegetables in Carloads.

"BEFORE DELIVERY TO IMMEDIATE CONNECTION:

"The Florida East Coast Railway Company, as an accommodation to its shippers and without charge, will receive request to change the consignee or destination of shipment of fruits and vegetables, in carloads, before delivery to immediate connections on the following condition, viz.:

"1. The request must be in writing, signed by the shipper, upon the form furnished by the Railway Company for that purpose, accompanied by the original bill of lading or shipping receipt, and must be made to the agent of the Company at the place of shipment.

"2. The agent when receiving such request will transmit the same by wire as soon as possible thereafter to the General Freight Agent of the Company of St. Augustine, and when the agent is advised that the necessary changes requested have been made will issue in lieu of the original bill of lading or shipping receipt a bill of lading conforming to the changes that have been made. In the event the Agent is advised that such change cannot be made because of delivery to immediate connection, or because of failure of wires, or other reasons the change cannot be effected, the Agent will return the original bill of lading to the shipper, advising him of the failure to make the change requested. This Company will make reasonable effort to

accomplish the change desired, but it is understood when receiving such request that this Company will not be responsible in the event of failure upon its part or upon the part of any of its officers or employes, to accomplish such change, nor for any error occurring out of such request.

"AFTER DELIVERY TO IMMEDIATE CONNECTION:

"1. The Florida East Coast Railway Company finds it is impracticable for it to act as forwarding agent to change the consignee or destination of shipments after they have been delivered to immediate connecting lines, and will not undertake the same, or accept request under such conditions. Such shipments, having passed beyond the rails of the Florida East Coast Railway Company, are subject to such provisions as are provided for in the tariffs of the participating carriers granting the privileges or performing the services, and as are lawfully on file with the Interstate Commerce Commission. Shippers desiring to change the name of the consignee or destination of shipments after the same have been delivered to immediate connecting lines must make their request directly to connecting lines, and the Florida East Coast Railway Company will not be responsible for any shipments the consignee or destination of which may have been changed from that given in this Company's original bill of lading or shipping receipt."

It seems clear from the Federal statute and the quoted and other provisions of the stipulation, that defendant's liability on the "through bill of lading" issued by the defendant, terminated at Waycross, Ga., and there are no facts adduced independent of or in connection with the bill of lading, to render the defendant liable for the "loss, damage or injury" to the tomatoes "by reason of the faulty and negligent transportation and ventilation in

transportation of said tomatoes between Waycross, Ga., and final destination."

While the tomatoes were moving in interstate transportation from the point of origin in Florida to their final destination in Wilkes-Barre, Pa., the liability of the defendant initial carrier under the statute for "loss, damage or injury" to the tomatoes in transit, terminated upon a delivery in sound condition and in due time at Waycross, Ga., the point of destination stated in the "through bill of lading" issued by the defendant to the plaintiff as required by the statute, which bill of lading was acted on by the plaintiff corporation; and the movement of the tomatoes from Waycross, Ga., to final destination at Wilkes-Barre, Pa., was directed by the plaintiff, the defendant not in any way participating in such directions or transportation after the tomatoes reached Waycross, Georgia.

Under the Federal statute the initial carrier is not liable for loss, damage or injury to property shipped, except under the bill of lading it issued or should have issued. In this case the bill of lading was issued to and acted on by the plaintiff as having been properly issued with Waycross, Georgia, as the destination of the interstate shipment. See Southern Produce Co. v. Norfolk Southern R. Co., 144 Va. 422, 132 S. E. Rep. 360; Houston & T. C. R. Co. v. Smith (Tex. Civ. App.), 258 S. W. Rep. 542.

The plaintiff contends that as the defendant is an initial common carrier under the Interstate Commerce Act, the question of diversion *vel non* or the number of diversions is immaterial; and that when the goods were delivered to the carrier to be moved in interstate commerce, the point of ultimate delivery was immaterial.

While it is true that the point of ultimate delivery and diversions in transit may be immaterial as to the char-

acter of the shipment as interstate transportation, when the transportation is practically continuous, yet the liability of the initial carrier is not fixed by the interstate character of the shipment alone, but is regulated by the "through bill of lading" that was issued or that should have been issued by the initial carrier. This is the interpretation put by Congress on its enactment as shown by the amendment of July 3, 1926, to the Act of Congress making the liability of the initial carrier "also apply in the case of property reconsigned or diverted in accordance with applicable tariffs filed as in this Act provided." See U. S. Code, p. 2119, 8 Compl. Stats. 1916, Sec. 8604a, p. 9289.

It does not appear that the shipper demanded or desired a bill of lading other than from the Florida point to Waycross, Georgia, or that a right to divert the shipment was asked or expected to be expressed in the bill of lading or otherwise recognized or concurred in by the defendant. It does appear that the plaintiff accepted the bill of lading as issued, and after the arrival of the shipment at Waycross, Georgia, the destination shown by the bill of lading, the plaintiff directed the further movements of the shipment without reference to the defendant or to the bill of lading issued by it. See Pere Marquette R. Co. v. J. F. French & Co., 254 U. S. 538, 41 Sup. Ct. Rep. 195. Under the Act of Congress the initial carrier is liable for any loss, damage or injury to property in interstate transportation "when transportation on a through bill of lading," or when such a bill of lading should have been issued. In this case the "through bill of lading" as issued was from Perrine, Florida, to Waycross, Ga., with no provision for reconsignment or diversion, and it is not shown that it was the duty of the defendant initial carrier to issue a bill of lading to any point beyond Waycross, Ga., or that

the bill of lading should have contained a provision permitting reconsignment or diversion, or that the defendant had any connection with the shipment beyond Waycross, Ga., the destination stated in the bill of lading issued to and accepted by and acted on, apparently without objection, by the plaintiff. Presumably the bill of lading issued by the defendant and accepted by the plaintiff was the one demanded by the plaintiff when the goods were delivered to the defendant for interstate transportation. In G. C. & S. F. Ry. Co. v. Texas Packing Co., 224 U. S. 31, the evidence showed "that the bills of lading originally issued were continued in force by the action of the parties." The evidence does not show in this case. Paragraph 12 of the stipulations is not the equivalent of consent to or participation or acquiescence in a diversion of the shipment after it reached its destination under the bill of lading as issued and accepted.

The payment of the freight charges to the final and delivering carrier in a sum equivalent to the through rate from origin to actual final destination, may have been proper under the law regulating the tariff charges in interstate transportation, but this does not control the liability of the initial carrier which is regulated by the Cummins Amendment of the Federal statute above quoted from.

The judgment for the defendant was proper and is affirmed.

TERRELL AND BUFORD, J. J.. concur.

ELLIS, C. J., AND STRUM, J., concur in the opinion.

BROWN, J., not participating.