P. J. Claussen Company, Appellant, v. Illinois Central Railroad Company, Appellee.

Gen. No. 34,292.

88

Heard in the second division of this court for the first district at the April term, 1930. Opinion filed October 14, 1930. Rehearing denied October 27, 1930.

O'CONNELL, McGLINN & O'GALLAGHER, for appellant.

FRED H. MONTGOMERY and HERBERT J. DEANY, for appellee; VERNON W. FOSTER, of counsel.

MR. JUSTICE BARNES delivered the opinion of the court.

Plaintiff brought this action to recover for alleged loss and damage to a carload shipment of tomatoes moving in interstate commerce. It was tried without a jury, and at the close of plaintiff's evidence defendant's motion for a finding in his favor, on the ground that plaintiff had failed to make out a prima facie case, was sustained. From the judgment entered thereon this appeal was taken.

The statement of claim is predicated upon defendant's alleged liability for said shipment from Anna, Illinois, to Montreal, Canada, alleging that defendant failed to transport and deliver said goods safely, etc., and furnished faulty equipment for such purpose and that the damage, to the extent of the difference between the value of said goods in good condition at the time they were due to arrive in Montreal and their value when they did arrive there, is $2,028.10.

In its affidavit of merits defendant denied agreeing to transport to Montreal and claimed it contracted to transport to Philadelphia only; that it did so safely, etc., without negligence or breach of its contract, and tendered at Philadelphia the goods for delivery to the consignee in the same condition as when received by it (with the exceptions of natural and antecedent causes which neither it nor its connecting carrier could by ordinary means prevent); that it did not furnish faulty equipment, was not guilty of carelessness or negligence, and none of plaintiff's goods was lost by reason thereof; that the loss and deterioration were due to the fact that the goods were not in good shipping condition for shipment to a distant point when delivered to defendant; that delivery was not accepted when tendered to the consignee at Philadelphia; that thereafter the agents of the plaintiff caused a reshipment by another carrier from Philadelphia to Montreal; that the damage complained of occurred after such reconsignment and after the shipment had passed from defendant's control, and that it was not a party to the contract of reconsignment.

If plaintiff had a cause of action for damages against defendant, it made no proof of them or their amounts. While it attempted to make proof of damages—thereby seeming to recognize the necessity of it—it relies here on the alleged failure of defendant to deny the amount of damages as alleged in its state-

ment of claim, claiming that the amount was thereby admitted.

If to meet this contention it were not enough to point out that defendant in its affidavit of merits averred "plaintiff was not damaged in the manner and to the extent claimed" which averment plaintiff by offering proof of damages presumably regarded as putting their amount at issue, yet as indicated in its statement of claim the damages were unliquidated in character. Rule 15 (1) of the municipal court of Chicago, of which we take cognizance (paragraph 58, Cahill's St. ch. 51), provides: "Allegations of unliquidated damages, special or general, need not be specifically denied, but shall be deemed to be put put in issue in all cases unless expressly admitted." Appellant's contention, therefore, that the amount of damages was admitted is not tenable.

But while failure to make proof of the amount of damages, if any, may be enough to require affirmance of the judgment, the question of whether there is any proof of liability on the part of defendant is the main issue.

Plaintiff's case rests mainly on documentary evidence. It consists of the bill of lading, the tariff rates from Anna, Illinois, to Philadelphia, Pennsylvania, and also from Anna to Montreal, on file with the Interstate Commerce Commission, and certain correspondence in the nature of a recital of the shipment movements which has no particular value in determining the question of liability.

Appellant contends that because defendant's bill of lading recites that it is "subject to the classifications and tariffs in effect on the date of the receipt by the carrier," and under the tariff schedule of both defendant and that of the Pennsylvania Railroad Company, which received the shipment at Philadelphia, plaintiff was entitled to the privilege of diversion and recon-

signment, these tariff provisions for reconsignment constituted a part of the contract, and that on reconsignment the shipment became one of a "through rate" from Anna to Montreal.

It is appellee's contention in substance that whether that be true or not under the Interstate Commerce Act, as amended July 3, 1926 (which was subsequent to the shipment in question) where the initial carrier becomes a party to the reconsignment, yet in the absence of any proof here connecting defendant with the reconsignment the bill of lading constitutes the sole contract, and defendant performed its obligations thereunder when, without any agreement for reconsignment to which it became a party, the goods were delivered in good condition at Philadelphia, the point of destination named in its bill of lading.

The only proof on the subject disclosed that after the car was delivered to and placed on the tracks of the Pennsylvania Railroad Company at Philadelphia it remained there some 35 hours available for delivery to the consignee, before any order of reshipment to Montreal was received by the Pennsylvania Railroad Company. There is an entire absence of any proof from whom the order came or to whom it was given. The inference is that it was given by the shipper or consignee to the Pennsylvania Company. Under such circumstances appellee contends that it was not shown to have been connected with the order of reconsignment, and hence the movement under its bill of lading was a distinct and separate movement from that from Philadelphia to Montreal.

These movements took place under the Interstate Commerce Act as it stood before the said amendment of July 3, 1926. Prior to that time the said act imposed liability on the initial carrier for loss, damage or injury, to goods caused by it or any connecting common carrier when the goods were transported on "a

through bill of lading." The transportation here, however, was not on a through bill of lading to Montreal but by one to Philadelphia where the shipment was reconsigned. Under the amendment of the Act of July 3, 1926, the liability of the initial carrier was extended "in the case of property reconsigned or diverted in accordance with the applicable tariffs filed, as in this Act provided." (49 USCA, sec. 20, par. 11.) But said amendment is not applicable to shipments before its passage. (*Gentile Bros. v. Atlantic Coast Line R. Co.*, 96 Fla. 228, 117 So. 890; *Gulf, C. & S. F. R. Co. v. Mars* [Tex. Civ. App.], 14 S. W. [2d] 877; *Chicago, R. I. & P. R. Co. v. S. L. Robinson & Co.* [Ark.], 23 S. W. [2d] 976.)

The fact that the shipment was subject to the classifications and tariffs then on file for rate making purposes which afforded the privilege of reconsignment, we deem unimportant to the issue unless the shipper availed itself of such offer by timely direction, request or notice to defendant or its agent before defendant completed the act of delivery under its bill of lading. The mere fact that subsequently the Pennsylvania Railroad Company, after holding the shipment available for delivery to the consignee, accepted an order for reconsignment to Montreal, without defendant's knowledge or acquiescence, as we must infer from lack of proof on the subject, cannot in our opinion, be deemed to change or transform defendant's bill of lading into a "through bill of lading" to Montreal so as to render defendant liable for loss, damage or injury after its delivery in Philadelphia under its bill of lading.

It is not questioned that where the initial carrier takes the order of reconsignment, or agrees to it, it is liable for loss, damage or injury incurred on the route of diversion. (*Gulf, C. & S. F. R. Co. v. Texas Packing Co.*, 244 U. S. 31.) But in the case at bar, as before

stated, there was no proof of any such agreement or that defendant or any agent of it received or gave the order of reconsignment.

In somewhat similar cases decided before passage of the amendment of July 3, 1926, the reconsignment was held to be a new contract. In *Southern Produce Co. v. Norfolk S. R. Co.* (Va.), 132 S. E. 360, cabbages were delivered to the initial carrier at Norfolk, Virginia, for shipment to Edgemoor, Delaware, a station on the line of the Pennsylvania Railroad Company a connecting carrier. Before the shipment reached Edgemoor the Pennsylvania Railroad Company received an order from the shipper to divert to Boston and conformed to the direction. In the suit to recover damages from the initial carrier under the Carmack Amendment, the court held that its contract was evidenced by the bill of lading and performed when the shipment reached Edgemoor, and that the movement from that point to Boston "was in effect a reconsignment of the shipment under a new parol contract between the plaintiff and the Penn. Railroad." The court said:

"It seems to us, then, manifest that it is essential, in order to recover of the initial carrier, to show that the injury is caused by some agent of the initial carrier whom it has engaged to aid it in the performance of its contract, for that is the purpose of the statute, but that its responsibility cannot be further extended so as to hold the initial carrier liable for the defaults of the shipper's own agents under other contracts to which the initial carrier is not a party."

A somewhat similar state of facts appears in *Chase & Co. v. Florida East Coast R. Co.,* 94 Fla. 1143, 115 So. 825. The shipment was delivered in good condition to Waycross, Georgia, on a bill of lading from Perrine, Florida, to that destination. About two hours after arrival of the shipment, the Atlas Coast Line Railroad

Company received instructions from the shipper to divert to Potomac Yds., Va. Under these instructions the goods moved on the latter company's line to Richmond, Va., and thence by connecting carrier to Potomac Yds., Va. While the shipment was there on the tracks of the Penn. Railroad Company it received an order for reconsignment to Wilkes-Barre. On arrival at the latter point the shipment was in such a deteriorated condition it was refused. The freight was paid to the final or delivering carrier and was equivalent to the tariff provided for a through rate from the point of origin to actual final destination. Affirming a judgment for defendant the court said that defendant's liability on the "through bill of lading" issued by it terminated at Waycross, Ga., and there were no facts adduced independent of or in connection with the bill of lading to render it liable for loss, damage or injury beyond Waycross, Ga.; that the movement beyond that point was directed by the shipper, "defendant in no way participating in such directions or transportation after the tomatoes reached Waycross, Ga.," and that the liability of the initial carrier was regulated by the "through bill of lading" that was issued or should have been issued by it. The court deemed that to be the interpretation put by Congress when it enacted the amendment of July 3, 1926, and said while the payment of a through rate from the origin to the actual final destination may have been proper, it did not control the liability of the initial carrier.

In reversing the judgment against the initial carrier in another case, where there were two subsequent diversions after the shipment had reached the destination fixed by the original bill of lading, the court in *Chicago, R. I. & P. Ry. Co. v. S. L. Robinson & Co.* (Ark.), 23 S. W. (2d) 976, a case where the rights of the parties accrued before the amendment of 1926 (Act of July 3, 1926, c. 761, 44 Stats. 835), referred to the fact

that the initial carrier did not accept the diversion or reconsignment and was not consulted in the matter and did not know anything about the diversion or reconsignment until some time after it had been made.

And under a somewhat complicated state of facts the forwarding of a shipment to another point after the car had reached the destination named in the bill of lading was held in *Pere Marquette Ry. Co. v. French,* 254 U. S. 538, to be a new transaction and it was said that "in turning over the car for this new shipment the railway made a disposal of it in assumed termination and discharge of its obligations, which was, in legal contemplation, a delivery." (p. 543.)

But appellant contends that the agreement is shown by the tariff provision referred to, to which appellee, the initial line, was a party, and that this tariff provision makes the number of movements under diversion or reconsignment one continuous shipment. The only case cited in support of this contention is *Sparr Fruit Co. v. Southern Pac. Co.,* 220 Ill. App. 180. Some language in the opinion (p. 185) might warrant that construction, where the reconsignment is with the knowledge, or under the direction of the initial carrier or its agent. It would appear that that case was decided on certain stipulations to which the language in said opinion referred to may have been applicable. However, it was said by Mr. Justice McReynolds in *Bracht v. San Antonio & A. P. R. Co.,* 254 U. S. 489, where the interstate tariffs permitting reconsignment were offered in evidence by plaintiff and rejected, "we are unable to say as a matter of federal law that tariff schedules for interstate shipments . . . constituted part of the agreement." In view of this holding and the tenor of the authorities above cited where the reconsignment was held to be a new transaction, we deem the contention untenable.

We deem it unnecessary to discuss the cited cases not involving the fact whether the initial carrier was in any way connected with the reconsignment order. The absence of proof on that subject we deem fatal to establishing the claim of defendant's liability.

We think the judgment should be affirmed.

*Affirmed.*

SCANLAN, P. J., and GRIDLEY, J., concur.