Wilson and Company, Inc., Appellee, v. Werner
Transportation Company, Appellant.
Werner Transportation Company, Appellee, v. Mid-
States Freight Lines, Inc., Appellant.

Gen. Nos. 43,479, 43,487.

26

Opinion filed November 20, 1946.   Released for publication December 5, 1946.

PETIT, OLIN & OVERMYER, of Chicago, for appellant; FRANKLIN R. OVERMYER, of Chicago, of counsel.

GOLDMAN, ALLSHOUSE & HEALY, of Chicago, for appellee; ROBERT G. DREFFEIN and MELVIN L. GOLDMAN, both of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

Wilson & Company filed a complaint in the superior court of Cook county against Werner Transportation Company and Mid-States Freight Lines to recover for damage to a shipment of poultry delivered to the Werner Transportation Company at Faribault, Minnesota, to be transferred to a connecting motor carrier in Chicago for ultimate delivery to eastern points. Werner Transportation Company, one of the defendants, filed a counterclaim against Mid-States Freight Lines, the other defendant, asking that should plaintiff be given judgment against it, that counterclaimant be awarded judgment against counterdefendant. A trial before the court without a jury resulted in a finding and judgment in favor of plaintiff and against the Werner Transportation Company for $1,415.73, and a separate finding and judgment on the counterclaim in favor of the Werner Transportation Company and against Mid-States Freight Lines in the same amount. The court further found that Mid-States Freight Lines was "not liable to the plaintiff." Separate appeals (consolidated in this court) were prosecuted by the Werner Transportation Company and Mid-States Freight Lines.

It is not contended that either judgment is against the manifest weight of the evidence. We are called upon to decide whether as to the disputed issues of

fact, there was competent evidence to support the respective judgments and whether, under the law applicable to the facts, the judgments, or either of them, should stand. Since February 1943 weekly shipments were made by plaintiff by way of Werner and its connecting carrier, Mid-States. The practice was to notify Werner a day in advance of a shipment, and Werner in turn would notify Mid-States so that proper connections could be made at Chicago for transportation to the east. Both defendants are common carriers. The shipment was moving under uniform straight bills of lading issued by Werner, and was loaded into three trailers. One trailer contained butter only. The other two trailers contained principally poultry, part of which was spoiled by reason of lack of refrigeration. The shipment originated on Thursday, June 24, 1943 at Faribault, Minnesota, and arrived at Werner's yard in Chicago on Friday, June 25, 1943. There was testimony on behalf of Werner, (denied by witnesses for Mid-States) that on Wednesday the former notified the latter that the shipment would leave Minnesota on Thursday, arriving in Chicago on Friday, and that Mid-States' representative stated that it would "take care" of the shipment. Werner used three trailers in bringing the shipment to Chicago and Mid-States would require four semi-trailers to carry the shipment to the eastern destinations. The poultry in transit was of a perishable nature, requiring intensive refrigeration. Each bill of lading bore the legend "Keep truck properly iced all the way."

When the shipment arrived in Chicago on Friday, June 25, 1943, an agent of the Werner company called up Mid-States. The representative of the latter refused to accept the shipment at that time for the reason that it (Mid-States) did not have available the special refrigerated type equipment necessary to transport the perishable goods which comprised the shipment. Plaintiff was notified. Plaintiff and Werner

then endeavored to procure another carrier to take the shipment east from Chicago, but were unsuccessful. In the meantime, Mid-States was awaiting the arrival of suitable equipment expected in Chicago on a return trip from the east. There was evidence that this equipment might be available Saturday, Sunday or Monday. Such equipment became available on Monday, June 28, 1943. On Monday morning one trailer was delivered to Mid-States. The contents of that trailer consisted of butter. The butter, although very soft, was again frozen and transported to the east in equipment of Mid-States. There was no claim filed as to the handling or transportation of this load of butter. That afternoon, Monday, June 28, 1943, two trailers loaded mostly with poultry were moved by Werner to Mid-States' yard in Chicago. Werner's driver testified that he backed the two trailers against a platform. At the time he brought the third trailer, in the afternoon, he coupled his tractor to the first trailer, which he had brought in the morning, and took it back to Werner's dock. Testimony for Mid-States was that when its employees inspected the contents of the two trailers brought over in the afternoon, they found that some of the poultry was "spoiled" and that there was "a terrible stench" coming out of the trailers. Thereupon, Mid-States refused to accept the shipment of the two trailers delivered Monday afternoon. On Tuesday the two trailers were brought to the plant of plaintiff in Chicago for the purpose of sorting the goods. Employees of plaintiff and Werner salvaged most of the poultry. Of 523 boxes of poultry, 111 had spoiled and 72 boxes were salvaged by refreezing. The balance of the boxes of poultry were frozen hard. The damages are based on the market value of the spoiled poultry, plus interest. There is no contention that the damages are excessive.

We shall first consider the judgment in favor of plaintiff and against the Werner company. It was

stipulated that at the time the goods were delivered to the initial carrier they were in "good first class condition." The proof showed that on Friday afternoon when the three trailers arrived from Minnesota, the chickens were in good condition and that there was adequate ice in the trailers. The weather was warm. There was evidence that on Friday, Saturday and Sunday evenings, employees of the Werner company put dry ice in the trailers; that during this period the trailers were inspected; and that the quantity of ice used and the way it was distributed and the condition of the refrigerated equipment preserved the contents in good condition. There was competent evidence that on Monday morning the trailers were inspected, and that the contents were then in good condition and properly iced. The evidence shows that when the trailers were examined by employees of Mid-States there was no ice and that the contents had deteriorated so that part of the poultry could not be used for human consumption.

The relation of plaintiff to the Werner company was that of shipper and common carrier. The Carmack Amendment to the Interstate Commerce Act applicable to interstate transactions, provides that a common carrier receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder for any loss, damage or injury to such property, caused by it or by any common carrier to which such property may be delivered, or over whose line or lines such property may pass, and that any such common carrier so receiving property for transportation shall be liable to the lawful holder of the receipt or bill of lading for the full actual loss, damage or injury to such property caused by it or by any such common carrier to which such property may be delivered, or over whose line or lines such property may pass. This amendment is

made applicable to motor carriers by the Federal Motor Carrier Act of 1935, now the Transportation Act of 1940. The courts hold that a carrier which accepts goods for shipment to a point on another line is treated as having made a through contract, and having thereby elected to treat the connecting carrier as its agent. The *Gamble-Robinson Commission Co. v. Union Pac. R. Co.*, 262 Ill. 400; *Galveston, H. & S. A. R. Co. v. Wallace*, 223 U. S. 481; *Chicago & E. I. R. Co. v. Collins Produce Co.*, 249 U. S. 186. Upon acceptance of the shipment, Werner became liable for the safe transportation of the merchandise until it reached its final destination beyond its own line. Werner urges that under the circumstances plaintiff was obligated to find a connecting carrier. We cannot agree with this contention. While plaintiff was interested in procuring a connecting carrier and made an effort to secure one, the evidence shows that Werner recognized that it was obligated to move the shipment to destination and that it eventually did move it by delivering the three trailers to the Mid-States' yard. On Monday, June 28, 1943 plaintiff and the two defendants were endeavoring to move the shipment to the east, and had the trailers been properly iced while in the possession of the defendants, the poultry would not have spoiled. As between plaintiff and the two defendants, it is clear that the loss was caused by the negligence of one of the defendants. Under the Carmack Amendment the action was properly brought and judgment entered against Werner. Werner also contends that it ceased to be a carrier, that it became a warehouseman and as such was not negligent in the handling of the shipment. Werner held plaintiff's shipment for three days while it was endeavoring to secure a connecting carrier. We are of the opinion that it continued to be a common carrier.

We turn to a consideration of the points urged for reversal of the judgment against Mid-States.

Werner did not claim any damages for the time when its trailers were inactive from Friday afternoon until Monday. It wishes to be indemnified for the amount of the judgment recovered by plaintiff. There was evidence that Mid-States led Werner to believe that when the shipment of poultry arrived on Friday, it (Mid-States) would have refrigerated equipment available for carrying the shipment to the east. The equipment did not become available until Monday. In *Chicago & A. R. Co. v. Kirby*, 225 U. S. 155, it was settled that a special contract to transport by a particular train or on a particular day is illegal when not provided for in the tariff. This proposition was again considered in *Davis v. Cornwell*, 264 U. S. 560. Apparently, the trial court took the view that under all the circumstances plaintiff could have supplied the equipment to move the shipment Friday or Saturday. In the view we take of the case, it is not necessary for us to decide whether Mid-States was at fault in failing to provide refrigerated equipment for the movement on Friday or Saturday. The equipment was available on Monday. The three parties involved were satisfied to move the shipment on Monday. No damages were claimed for any alleged delay in the movement of the merchandise. Mid-States introduced testimony that on the first trailer delivered Monday afternoon the liner over the door was missing and that there was an opening in the top of the second trailer delivered that afternoon. It also introduced testimony that the trailers had soot and dirt in them. If this testimony be accepted as true, the trailers delivered in the afternoon by Werner were not in good condition as refrigerated equipment. The testimony introduced by Werner is that the trailers were at all times properly and adequately iced; that the shipment was properly and adequately iced when inspected Monday morning prior to the delivery to Mid-States' yard; and that the trailers were in good condition. The trial

judge was justified in finding from the evidence that when the poultry in the trailers was delivered to Mid-States Monday afternoon, it was in good condition. Mid-States introduced evidence that the trailers were inspected on Monday, that the spoiled condition was discovered and that both plaintiff and Werner were notified. This testimony is controverted by testimony introduced by Werner. Gordon Greenberg, a witness for Werner, testified that Mr. Martin of Mid-States called him on the telephone Monday morning and told him to send over the first load as quickly as could be done, and the other two loads in the afternoon; that he inspected the trailers Monday morning and found 300 pounds of dry ice in each trailer; that there was no odor coming from the trailers in which the poultry was loaded; that the first trailer was sent over to Mid-States at about 10:00 a. m.; that the second trailer was sent over at 4:00 p. m. and the third trailer at 5:00 p. m.; that this was in accordance with the order in which Mid-States wished the trailers sent over; that when the driver delivered the third trailer, he brought back the empty first trailer; and that Mr. Martin told him on Monday morning that the shipments would "definitely move east that day." Witness testified further that the next development was a call from Martin Tuesday afternoon, wherein Martin said that "they had just started to transfer to the other two trailers and he had found an odor in one of the trailers and he was therefore not accepting it." Witness, answering a question as to whether in his talk with Mr. Martin on Tuesday afternoon, anything was said as to whether or not Mid-States had re-iced the trailers on Monday night, stated that he (witness) had asked "very definitely" if "they" had re-iced the trailers, and that Mr. Martin answered that they had not. In answer to the question: "Did he [Martin] indicate that they were just then reopening them for the first time?" Mr. Greenberg said: "Yes." Witness further

stated that Mid-States "finally accepted the balance of the shipment which was left on those two trailers on Wednesday." Mr. Martin testified he took a vacation at that period and that he was not in Chicago on Monday or Tuesday. He denied having the conversation with Mr. Greenberg attributed to him as having taken place on Tuesday. Theodore S. Reichel, a witness on behalf of Werner, testified that he spotted the trailer at Mid-States' dock Monday morning and brought the other two trailers over in the afternoon. On cross-examination, this witness testified that Mr. Sullivan, dispatcher for Mid-States, told him to ask Mr. Martin where he (Martin) wanted the trailers placed, and that Martin told him "in the yard where you got the other one." In this cross-examination he also testified that he talked to Martin only once that afternoon; that then he asked Martin where he wanted the trailers placed and "that is where I put them." The court had a right to believe this testimony on behalf of Werner. While Mr. Martin testified that he was not in Chicago on Monday or Tuesday, Reichel testified that he talked to him on Monday afternoon, and Gordon Greenberg testified that he talked to him over the telephone on Monday and Tuesday. There was competent evidence from which the court could find that when the trailers containing the poultry were delivered to Mid-States' yard on Monday afternoon, they were properly iced and in good condition. The employees of Mid-States did not ice the equipment on Monday evening. The testimony of Greenberg as to his conversation with Martin, was that Mid-States' employees did not discover the spoiled condition of the poultry until Tuesday. There is support in the record for Werner's position that Mid-States failed to open the shipment until Tuesday, having had possession of it over night without re-icing it. We are satisfied that the court did not err in entering judgment for Werner and against Mid-States.

For the reasons stated the separate judgments of the superior court of Cook county in favor of Wilson & Company, a corporation, and against Werner Transportation Company, a corporation, and in favor of Werner Transportation Company, a corporation and against Mid-States Freight Lines, a corporation, are affirmed.

*Judgments affirmed.*

LEWE, P. J., and KILEY, J., concur.