LOUIS H. YARRUT, Judge ad hoc.
Plaintiff-appellant, hereinafter referred to as shipper, prosecutes this appeal from an adverse judgment in favor of defendant-appellee, hereinafter referred to as carrier.
Shipper sues to recover $372, plus interest and costs, the value of a shipment of merchandise delivered to carrier in New Orleans on June 21, 1949, for shipment to a consignee at Coeur D’A Lene, Idaho, on a through 'bill-of-lading, sight-draft attached, to shipper’s order, notify consignee. Shipper agreed to pay all freight and transportation charges.
Upon arrival at Coeur D’A Lene consignee refused the shipment and carrier so notified shipper. On September 19, 1949, shipper wrote carrier, enclosing new bills-of-lading in favor of a new consignee and changed the destination to Spokane, Washington. This change of destination and consignee is evidenced by letter from shipper to carrier reading as follows:
“We enclose herewith original B/L covering shipment two crated Servi-Cycles forwarded by us on June 22nd to Jensen & Gaasch, 245 Northwest Boulevard, Coeur D’A Lene, Idaho, rounted Consolidated Freightways at Chicago. We also enclose new set of Order Notify Ladings and request that these machines be reshipped to:
Columbia Cycle Company
1412 N. Monroe Street
Spokane, Washington
“Please make reshipment on prepaid basis, billing the Simplex Manufacturing Corporation for additional freight charges involved, plus whatever storage charges which may have accumulated while the consignment remained undelivered in Coeur D’A Lene.
“Kindly have the original B/L on the reshipment of this machine furnished us duly receipted as quickly as possible in order that we may issue draft and present to bank for collection.”
Without any protest or reservation, carrier accepted the proposal of the shipper as set forth in the above letter and, in turn, sent the new bills-of-lading to the *51 original terminal carrier at Coeur D’A Lene, with instructions to reconsign to the new consignee at Spokane. While the new shipping documents were lost, the consignment arrived in Spokane, Washington, but was never delivered to the new consignee because of the loss of the shipping documents. After correspondence between the carrier, the shipper and the intervening carriers, and a lapse of 18 months, the terminal carrier at Spokane advised carrier that it was still holding the shipment; that the shipment would hardly bring $100 on the market (or a depreciation in value of nearly 75%) subject to a $60 storage charge.
As a result, shipper made claim against carrier for the loss of the shipment, which carrier denied.
Carrier resists the claim on two grounds: (1) That when it accepted the reconsignment order for the change of destination and consignee, it was not acting in the capacity of carrier, but gratuitously for the accommodation of the shipper; and (2) That shipper could have obtained the release of the shipment at Spokane under National Motor Freight Classification rules, Rule 7, Section 4, permitting the bonding for double the amount of the value of the shipment to secure delivery in advance of the surrender of the bill-of-lading.
During the argument in open court, counsel for carrier admitted that if we find defendant, by virtue of the letter of September 19, 1949, remained the initial carrier, then defendant would be responsible for the loss. Such a concession is legally sound, because the- law makes no distinction between liability for physical loss or damage, and liability for depreciated market value resulting from unusual delay in delivery, caused by the unexplained loss of shipping documents controlling the shipment.
It is unnecessary to discuss here whether or not the carrier’s liability terminated upon the tender of the shipment, and its refusal by the original consignee in Coeur D’A Lene, the original terminus. Whatever the shipper may have done under the Carmack amendment to relieve itself of liability as an initial carrier is of no moment. Carrier accepted the instructions of shipper without protest or reservation, so must be held to have amended the original contract of carriage to the extent of the accepted change. Carrier did not protest, nor make any exception or reservation under the change order, as to the new consignee and destination. The letter of change, quoted above, is too clear and explicit for doubt.
This was an interstate shipment controlled by federal statute, which makes the initial carrier liable to the shipper for any loss, damage or injury to shipments transported on a through bill-of-lading issued by it. In this case the loss or damage did not occur during the transportation on the original bill-of-lading, but during a further transit after a reconsignment by the shipper under an amended lading. The order of reconsignment was transmitted by carrier apparently without delay, fault or negligence on its part. This undertaking by the carrier under the original Carmack amendment, prior to its amendment of July 3, 1926, would not have imposed liability for loss, damage or injury to the shipment, after reconsignment and while in transit beyond the destination stated in the original bill of lading. Chase & Co. v. Florida East Coast Ry. Co., 94 Fla. 1143, 115 So. 825; Clark v. Louisville & N. R. Co., 216 Ala. 637, 114 So. 295; Parker-Bell L. Co. v. Great N. R. Co., 69 Wash. 123, 124 P. 389, 41 L.R.A.,N.S., 1064; Pere Marquette R. Co. v. J. F. French & Company, 254 U.S. 538, 41 S.Ct. 195, 65 L.Ed. 391; Roberts Federal Liability, 2d Ed., Vol. 1, Sec. 346, p. 683.
However, as a result of the amendment of July 3, 1926, to the original Carmack amendment, the federal statute now provides that the liability imposed upon the initial carrier of interstate shipments “shall also apply in the case of property reconsigned or diverted”. 49 U.S.C.A. 20(11), Gentile Bros. Co. v. Atlanta Coast Line Co., 96 Fla. 228, 117 So. 890.
*52 As this shipment originated after the last amendment to the Carmack amendment, the carrier here, as the initial carrier, accepting the order for re-consignment, without protest or reservation, became liable for loss or damage occurring anywhere between point of shipment and ultimate destination. Wilson & Co. v. Werner Transp. Co., 330 Ill.App. 25, 69 N.E.2d 713; Deer Park Baking Co. v. Cleveland & Chicago Motor Express Co., Ohio App., 68 N.E.2d 824; Keystone Motor Freight Lines v. Brannon-Signaigo Cigar Co., 5 Cir., 115 F.2d 736; Warley Fruit & Produce Co. v. Louisville & N. R. Co., 17 Ala.App. 263, 84 So. 311.
Therefore, the defense that the carrier here was not acting in the capacity of carrier, but was a gratuitous bailee or warehouseman, is not well founded under the facts and the law.
With reference to the failure of shipper to effect a release of the shipment upon giving bond for twice its value under the National Motor Freight Classification rules, referred to above, it is incumbent upon the carrier to retrieve and minimize the shipment; not the shipper. The shipper could not be expected to involve itself in an additional loss of 200% of the value of the original shipment after the original shipment had depreciated in value to 25%, and that amount practically wiped out by storage and other charges.
Under the circumstances, shipper is entitled to recover from the carrier the full value of the shipment, $372, with legal interest from June 21, 1951, until paid, and all taxable costs in both courts.
Accordingly, the judgment appealed from is annulled, avoided and reversed, and it is now ordered that there be judgment in favor of plaintiff, Simplex Manufacturing Corporation, and against defendant, Cook Truck Lines, Inc., for the full sum of $372, with legal interest from June 21, 1951, until paid, together with all costs.
Reversed.
JANVIER, J., absent, takes no part.